AMERICAN FEDERATION OF STATE, COUNTY, AND MUNIC-
IPAL EMPLOYEES, AFL-CIO, APPELLEE, v. COUNTY OF
LANCASTER, NEBRASKA, DIVISION OF PUBLIC WELFARE,
APPELLANT.
241 N. W. 2d 523

Filed May 5, 1976. No. 40316.

Ronald D. Lahners, Michael G. Heavican, and William
A. Harding of Nelson, Harding, Marchetti, Leonard
& Tate, for appellant.

Robert E. O'Connor, Robert E. O'Connor, Jr., and
Zwerdling, Maurer, Diggs & Papp, for appellee.

Thomas F. Dowd and John J. Reefe, Jr., for amicus
curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

County of Lancaster, Division of Public Welfare, here-
inafter referred to as county, appeals from an order of
the Court of Industrial Relations finding county to be
the sole employer concerned herein and in ordering an
election for the selection of a bargaining agent. The
issue involved is whether county is so inextricably tied
to the State Department of Public Welfare, hereinafter
referred to as state, by statute and regulation that the
two must be considered a functionally integrated unit
for purposes of collective bargaining. We reverse.

The American Federation of State, County and Munic-

ipal Employees, AFL-CIO, hereinafter referred to as appellee, filed a representation petition with the Court of Industrial Relations to represent certain employees of County of Lancaster, Nebraska, Division of Public Welfare. County, among other defenses set forth in its answer, requested the court to notify the State of Nebraska, Department of Public Welfare, of the pendency of this proceeding. It requested that said government entity be required to appear at the hearing in this case in order to allow for a full and complete development of all facts relating to the joint employer issue involved.

The bargaining unit herein consists of various clerical and administrative positions in the Lancaster County Division of Public Welfare. The employees in the unit are responsible for the administration of such federally funded assistance programs as Aid to the Blind, Aid to the Disabled, Aid to Families with Dependent Children, and Aid to the Aged. Excluded from the bargaining unit are those employees of the division classified as supervisory, professional, or confidential. State provides county with 98 percent of the funding necessary to pay salaries at the county level.

The question raised is one of first impression in this jurisdiction. The review in this court is in the manner provided by law for disposition of equity cases. § 48-812, R. R. S. 1943. There are no disputed questions of fact. It is the conclusion to be drawn from the facts which frames the issue herein.

County seeks to apply the concept of joint employer found in cases arising under the National Labor Relations Board (NLRB). In City of Grand Island v. American Federation of S., C. & M. Employees (1971), 186 Neb. 711, 185 N. W. 2d 860, we said: "In reaching its decision the Court of Industrial Relations found that decisions under the National Labor Relations Act were helpful but not controlling upon the court. We think this is a correct statement as to the consideration to be given to the decisions under the federal law."

NLRB precedent is especially helpful in the instant case. We find no Nebraska precedent pertinent to a joint-employer type situation. In the private sector, under the joint-employer concept, successor organizations are held to the terms of labor contracts signed by their predecessors. There are many NLRB cases on that issue. In Radio Union v. Broadcast Service of Mobile, Inc. (1965), 380 U. S. 255, 85 S. Ct. 876, 13 L. Ed. 2d 789, the Supreme Court stated: "* * * in determining the relevant employer, the Board considers several nominally separate business entities to be a single employer where they comprise an integrated enterprise, * * *. The controlling criteria, set out and elaborated in Board decisions, are interrelations of operations, common management, centralized control of labor relations, and common ownership." These elements, indicative of joint employer status in the private sector, are still recognized by the National Labor Relations Board. Graphic Arts International Union Local 262 (1973), 208 NLRB No. 28 at p. 37; Wayland Distributing Co., Inc. (1973), 206 NLRB No. 57 at p. 493.

It is obvious that common ownership, although relevant in the private sector, is irrelevant in the public sector with which we are here involved. We concern ourselves, therefore, with the other three criteria.

The county argues that the regulations of the state welfare department and the hearing testimony of county's welfare director show conclusively the joint nature of the activities of county and state.

Section 68-704, R. R. S. 1943, establishes the county division. It reads as follows: "There is hereby established in each county of the state a county division of public welfare which shall be governed by the county board, hereinafter known as the county board of public welfare, a county director of public welfare, and such additional employees as may be necessary for an efficient performance of the welfare duties of the county."

Section 68-706, R. R. S. 1943, provides that the county

board of public welfare: "(1) Shall have general supervision over all the duties and responsibilities assigned to the county division of public welfare and shall make necessary policies and regulations as to effect an efficient administration, which policies and regulations shall be in conformity with the statutes of Nebraska and the policies of the Department of Public Welfare insofar as they relate to categorical assistance and child welfare services; * * * (4) Shall meet not less than once each month to review the operations of the county division of public welfare and to take such action as may be necessary in conformance with Department of Public Welfare regulations and the statutes of Nebraska."

Section 68-709, R. R. S. 1943, directs the county director of public welfare to: "(3) Cooperate with other welfare agencies and coordinate the public welfare operations in the county with such services provided by the Department of Public Welfare; * * *."

The State Department of Public Welfare is also established in Chapter 68, article 7, R. R. S. 1943. The Director of Public Welfare, head of that department, is empowered by section 68-703, R. S. Supp., 1975: "(2) To determine the general principles and outline the operation of public assistance, child welfare, and related activities; (3) To establish rules and regulations for efficiently administering the department and performing the duties assigned to it; * * * (10) To provide such supervisory services as may be required to determine that county departments of public welfare are fulfilling their administrative duties in compliance with the statutes of Nebraska and state regulation."

The state regulations mentioned in the statutes are those regulations which, when compiled, form the State Plan and Manual, the guidebook for state and local welfare employees. They are voluminous. The regulations contained in the State Plan and Manual are designed to meet Federal Health, Education, and Welfare (H.E.W.) requirements. These must be satisfied in order for the

state to qualify for matching federal funds. Counsel for county have pointed out several examples within these regulations which indicate the nature of state involvement in the county welfare operation.

The common management and interrelated operations of the state department and the county division are indicated by the State Plan and Manual. § V-9211.03 (relating to accrued vacation leave where county division employees are transferred to the state department and vice versa); § VII-2000 et seq. (statistical reports from county divisions to the state department); § VII-4210 (time accounting reports from the county divisions to the state department); § VI-1720 (county division expenditure reports to the state); § VI-2720 (state authorization for capital expenditures over $50.00); § VI-2920 (state approval for organizational memberships of the agency or agency individuals); § V-9260.01 (state approval of county division staff attendance at out-of-state meetings and conferences); and § VI-1730 (state audit of county division administrative expenses, collections, and recoveries).

While common management and interrelations of operation are important, the crucial test for the purposes of labor-management relations herein must be the extent to which labor relations are under centralized control. Under this test, the statutory and regulatory scheme clearly shows the necessity for the state's presence as an employer at the bargaining table. Section 68-708, R. R. S 1943, provides: "The county director of public welfare with the approval of the county board of public welfare shall employ such additional personnel as may be necessary for the efficient performance of the welfare services of the county and, insofar as such employees relate to assistance and child welfare, they shall comply with the provisions of the state merit system."

This requirement, compliance with the State Joint Merit System, effectively takes from the county division much of the prerogative it has with respect to personnel

management. The State Joint Merit System is a comprehensive personnel scheme to assure the "efficient and economical administration" of the functions of many state and local agencies. The county boards of public welfare and the State Department of Public Welfare *together* are treated as one agency under the merit system regulations. See Rule 1 (2) (d) Joint Merit System Rules and Regulations.

The merit system regulations are incorporated into the State Plan and Manual. Under Rule 3 of those regulations, each agency is directed to formally adopt its own comprehensive classification plan for its positions. This the state department has done for itself and for the counties in Part V of the State Plan and Manual, wherein job descriptions are provided for both state department and county division employees.

Rules 4 (1) (a) i and ii read as follows: "i. Any County Board of Public Welfare may recommend to the State Board of Public Welfare a county compensation plan that may differ from the State-wide compensation plan adopted by the State Board of Public Welfare, and such county plan shall be effective on approval by the State Board of Public Welfare. The State Board of Public Welfare shall establish standards including consideration of relevant factors which shall serve as the basis upon which approval of such county compensation plan may be given.

"ii. The State-wide compensation plan shall be effective in all county public welfare departments in absence of an approved county compensation plan."

The above rules require state department approval for compensation schedule changes at the county division level.

Other merit system rules governing the county division include those relating to application and examination; job appointments; promotions; transfers and demotions; separation, tenure, and reinstatement; and appeals and

grievances. The State department is responsible, under the merit system, for the control of these facets of personnel management.

Of particular importance in the labor relations context is Rule 13, dealing with appeals and grievances, an important provision of any labor contract agreement. Appeal to the Joint Merit System Council, a state-level council, is allowed from such actions as examination rejection, removal from the register, dismissal, suspension, demotion, or discrimination. Each agency is directed to provide grievance procedures for its employees for those situations where appeal to the state merit council is not allowed. Here, the agency directed to provide grievance procedures is the State Department of Public Welfare.

It appears that under the state merit system, the state department is empowered to control most of the important facets of labor management relations. The state's involvement in the areas traditionally subject to collective bargaining is apparent. Since the state and the counties are treated as one unit for personnel management purposes by the statute and applicable regulations, it follows that the two must be considered a functionally integrated unit for the purpose of collective bargaining with the plaintiff.

As the Court of Industrial Relations found, the evidence is overwhelming, both documentary and oral, that the state interferes in all the minutiae of the operations of the county division of public welfare. It prescribes exact and exacting standards which must be met under penalty of nonreimbursement for the funds erroneously expended. The state even goes so far as to keep one person on the premises at all times to maintain surveillance on the processing of welfare applications. Yet, the Court of Industrial Relations found that in spite of this manipulation of the tiniest detail of the county's handling of the program by the state, it is irrelevant

to the determination of joint employers or the determination of a proper bargaining unit. We cannot disagree more.

Considering the statutorily required participation of the merit system council, it would seem that the state must be a party to any contract negotiated between county and the union. The experience of Douglas County, detailed in its brief as amicus curiae, points up the absurd result which would follow if the position of the Court of Industrial Relations were sustained. The county would have no control over and would be unable to bargain collectively on most of the issues traditionally considered to be at the heart of collective bargaining.

The state practically controls grievance procedures under the state merit system. Salary matters under the state pay plan are effectively under its control. The employees of county public welfare are paid according to the state merit plan, with funds provided by the state. Section 68-708, R. R. S. 1943, mandates compliance with the state merit system on matters relevant to personnel policies. This includes holidays, sick leave, and other fringe benefits.

To hold on this record that county is the sole employer of the employees concerned is to ignore reality. County actually has no effective control over the areas usually embraced in labor agreements. To force it into bargaining as the sole employer will be either a futile or a disastrous act.

On the basis of the record, we determine that county is in no position to effectively bargain with any bargaining agent as the sole employer of county welfare employees. Collective bargaining is not possible without the inclusion of the State Department of Public Welfare, because the activities of the Lancaster County Board of Public Welfare are jointly controlled by and interrelated with the State Department of Public Welfare. The application of the county should have been sustained.

The orders of July 17 and 25, 1975, are reversed. The

election to determine a bargaining agent held herein, pursuant to the order of the Court of Industrial Relations, is hereby set aside and held for naught. This case is remanded to the Court of Industrial Relations with directions to dismiss the proceeding herein. All costs are taxed to the appellee.

REVERSED AND REMANDED WITH DIRECTIONS.