AMERICAN FEDERATION OF STATE, COUNTY AND MUNICI-
PAL EMPLOYEES, AFL-CIO, LOCAL 2088, APPELLEE, V.
COUNTY OF DOUGLAS, NEBRASKA, DIVISION OF PUBLIC
WELFARE, ET AL., APPELLEES, IMPLEADED WITH STATE
OF NEBRASKA, DEPARTMENT OF PUBLIC WELFARE, ET
AL., APPELLANTS. AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO,
APPELLEE, V. COUNTY OF LANCASTER, NEBRASKA,
DIVISION OF PUBLIC WELFARE, ET AL., APPELLEES,
IMPLEADED WITH STATE OF NEBRASKA, DEPARTMENT
OF PUBLIC WELFARE, ET AL., APPELLANTS.

267 N. W. 2d 736

Filed July 5, 1978. Nos. 41516, 41517.

Paul L. Douglas, Attorney General, and John R.
Thompson, for appellants.

John B. Ashford of Bradford & Coenen, for appel-
lee American Fed. of S., C. & M. Emp. AFL-CIO.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

The American Federation of State, County and Municipal Employees, AFL-CIO Local No. 2088, hereafter called the union, brought two actions, one against Douglas County and one against Lancaster County, seeking to have the union declared the exclusive bargaining agent for the employees of the respective county welfare departments. The two actions were consolidated for trial in the Court of Industrial Relations. The State Department of Public Welfare was made a party in each case in compliance with American Fed. S., C., & M. Emp., AFL-CIO v. County of Lancaster, 196 Neb. 89, 241 N. W. 2d 523. In view of the pleadings, the Court of Industrial Relations ordered all 93 counties of the state made parties in both actions. Issues were raised as to the constitutionality of the statutes establishing the Court of Industrial Relations and its jurisdiction as applied to the State Department of Public Welfare. At oral argument in this court the State conceded that the issue of constitutionality of the statutes as applied to the State Department of Public Welfare was foreclosed by the decision of this court in American Fed. of S., C. & M. Emp. v. State, 200 Neb. 171, 263 N. W. 2d 643. The issues on this appeal are therefore limited to those involving the determination of the appropriate bargaining unit for county-level welfare employees jointly employed by the State Department of Public Welfare and the respective County Boards of Public Welfare.

The Court of Industrial Relations determined that the appropriate bargaining unit consisted of a single county-level unit in each county, excluding certain supervisory employees. The court found that there had been a proper showing of interest in only four counties, Douglas, Lancaster, Sarpy, and Scotts

Bluff, and ordered an election to be held in each of those counties. None of those four counties have appealed. The State Department of Public Welfare and the county divisions of public welfare for 41 of the 93 counties have appealed.

Some preliminary explanatory facts are advisable. The union was voluntarily recognized by Douglas County in 1973. A collective bargaining agreement was entered into by the union and Douglas County which remained in effect until July 1, 1976. On May 5, 1976, this court determined that county-level welfare employees were jointly employed by the State Department of Public Welfare and the respective counties. See American Fed. S., C., & M. Emp., AFL-CIO v. County of Lancaster, *supra*. Douglas County refused to renegotiate its contract without the State's participation, and Lancaster County and the State Department of Public Welfare refused to recognize the union. The two actions against Douglas County and Lancaster County were subsequently instituted by the union. The State Department of Public Welfare was a named defendant in each case. The divisions of public welfare of all 91 remaining counties of Nebraska were then joined as parties defendant by order of the Court of Industrial Relations. The cases were then consolidated for purposes of trial and appeal.

The facts here are virtually undisputed. The State Department of Public Welfare and the respective county divisions of public welfare of this state are engaged in a cooperative effort to provide welfare services. The welfare services include the administration of federally funded programs, such as aid to the blind and disabled, families with dependent children, and to the aged. The record also reflects that some counties have additional welfare programs which have been initiated and are operated independently by the counties.

The State Department of Public Welfare has ap-

proximately 500 employees working in the central office of the State Public Welfare Department, the Nebraska Center for Children and Youth, and the six regional offices throughout the state. These offices are all separate from the various county welfare offices. With some exceptions, the state employees in these offices supervise the administration of the welfare programs and train county employees. Neither the State nor the union now contend that these state-level employees should be made a part of the bargaining unit of any county-level unit.

There are slightly more than 1,300 county division welfare employees jointly employed by the state and the respective counties who are engaged in providing welfare services at the county level. These employees are subject to the state merit system. The state has established a system of job classifications for welfare workers. A series of 11 pay steps have also been established. Each county selects a series of any six consecutive steps for its welfare employees' compensation plan. The counties can, and in many cases do, choose to pay higher wages than those authorized by the state plan, but if they do, they are not reimbursed by the state for that additional compensation.

The job classification plan on the state level divides the counties into four classes based upon population and caseload. Douglas County is the only county in Class I, Lancaster County is the only county in Class II, and the remaining counties are in Classes III and IV. Some job classifications are only used in Classes I and II and do not apply to Classes III and IV. There are also job classifications on the state level which are not found on the county level.

Each individual county exercises independent control over most aspects of the county division of welfare operations. Although all the county-level welfare employees are subject to the state merit sys-

tem, each individual county has its own grievance procedures. Not all grievances an employee might have are subject to the state system. Evaluations of employee job performance are made at the county level by the supervisor or county director. County officials make the decision as to whether an employee should be promoted or whether a probationary employee should be retained. So long as a previously funded position is available, the state does not have the authority to pass on promotions. Similarly, a lateral movement within the county department does not require state approval.

The State Department of Public Welfare cannot order the transfer of an employee from one county to another, nor order any county division director to accept any employee from the state or from any other county, and there is little or no interchange of employees from county to county.

Conditions of employment for welfare employees can and do differ from county to county. Each individual county establishes its own annual and sick leave policies, office hours, pay periods, and schedule of holidays observed. Each county establishes its own rules for vehicle use, office attire, and office closings.

On the basis of the foregoing evidence the Court of Industrial Relations determined that the "working" level for county division welfare employees is basically in the 93 individual county divisions of public welfare, rather than in the State Department of Public Welfare, and that the state agency is primarily a supervisory agency, monitoring the administration of the several welfare programs. The court concluded that a single statewide unit would be inappropriate. The court then established separate county-level bargaining units as the appropriate bargaining units, and ordered an election to be held in each of four counties, Douglas, Lancaster, Sarpy, and Scotts Bluff, the only counties in which there had been a

sufficient showing of union interest.

The issue on this appeal is whether the appropriate bargaining unit for county-level welfare employees, jointly employed by the state and the respective counties, should be a single statewide unit or should be a single county-level unit in each county.

In City of Grand Island v. American Federation of S. C. & M. Employees, 186 Neb. 711, 185 N. W. 2d 860, this court determined that decisions under the National Labor Relations Act with respect to appropriate bargaining units were helpful but not controlling upon the court. In that case this court specifically held: "In determining what is an appropriate employee unit for the purpose of collective bargaining, consideration may be given to the mutuality of interest in wages, hours, and working conditions; the duties and skills of the employees; the extent of union organization among the employees; and the desires of the employees."

In Cornell University, 183 NLRB 329 (1970), the National Labor Relations Board said: "In determining whether a particular group of employees constitutes an appropriate unit for bargaining where an employer operates a number of facilities, the Board considers such factors as prior bargaining history, centralization of management particularly in regard to labor relations, extent of employee interchange, degree of interdependence or autonomy of the plants, differences or similarities of skills or functions of the employees, and geographical location of the facilities in relation to each other." This court quoted and adopted that language in American Assn. of University Professors v. Board of Regents, 198 Neb. 243, 253 N. W. 2d 1, and said: "It has long been held that a basic inquiry in unit determinations is whether a community of interest exists among the employees which is sufficiently strong to warrant their inclusion in a single unit."

The State contends that the establishment of sepa-

rate county-level units rather than a single statewide unit constitutes a fragmentation of bargaining units in violation of section 48-838 (2), R. S. Supp., 1976. Clearly it is the intent of the Legislature, and the policy of this court, that *undue* fragmentation of bargaining units within the public sector is to be avoided. The considerations set forth in section 48-838 (2), R. S. Supp., 1976, in regard to collective bargaining units of employees, are not exclusive; and the Court of Industrial Relations may consider additional relevant factors in determining what bargaining unit of employees is appropriate. See American Assn. of University Professors v. Board of Regents, *supra.*

The evidence in the case now before us fully supports the finding of the Court of Industrial Relations that a single statewide bargaining unit of county-level welfare employees would be inappropriate, and that there is little or no community of interest among the county-level welfare employees in the 93 separate counties sufficiently strong to warrant their inclusion in such a single unit. Prior union bargaining history has been established only at the county unit level, and whether successful or not, in only a very few counties. There is no prior statewide bargaining history for county-level welfare employees. There is little or no interchange of employees between counties or between the state and a county. Each county operates its welfare program independently of the program of any other county, and, except for the coordinating supervision of the State Department of Public Welfare, each county is virtually autonomous.

Urban and rural differences between individual counties are obvious and are pointed up by the differences in numbers of employees, differences in job classifications and functions, and the overlapping of functions and classifications in many rural areas. The evidence is persuasive that the "working" level for county-level welfare employees rests basically in

the division of public welfare of each county. More than half of the counties in the State of Nebraska have announced policies against a single statewide unit and those counties are not appellants in this action.

Review by this court of orders and decisions of the Court of Industrial Relations is restricted to considering whether the order of that court is supported by substantial evidence justifying the order made, whether it acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. American Assn. of University Professors v. Board of Regents, *supra;* House Officers Assn. v. University of Nebraska Medical Center, 198 Neb. 697, 255 N. W. 2d 258.

The decision and orders of the Court of Industrial Relations in these cases are supported by substantial evidence justifying the orders made, and its action was not arbitrary, capricious, or unreasonable. The judgment is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein because I believe that sections 48-801 et seq., R. R. S. 1943, are unconstitutional for the reasons I set out in full in my dissent in American Fed. of S., C. & M. Emp. v. State, 200 Neb. 171 at p. 180, 263 N. W. 2d 643 at p. 648 (1978).

I further dissent because of the undue fragmentation permitted by the majority opinion. There is no merit in the contention that there are real differences among the employees of the several county divisions of public welfare as to pay and other working conditions. The rules and regulations of the State Department of Public Welfare and the statutes of Nebraska require that all of the county divisions of public welfare employees be under the merit system and subject to the rules and regulations of the state. While such rules and regulations permit the county

divisions of public welfare to exercise discretion in certain areas, such as the adoption of pay scales within given ranges, the establishing of office hours within certain limits, and certain fringe benefit plans, all such variations are, however, within the ambit of the rules themselves. In addition, all the welfare functions performed by the employees at the county level are essentially the same from one county to the next.