REQUESTED BY: Eldin J. Ehrlich, Director, Nebraska Department of Public Welfare.
1. Can the county boards remove themselves from the statewide compensation plan and return to an approved county compensation plan?
2. Can the county boards remain on the state plan, but not allow the legislative pay changes (contained in LB 964 and LB 946) effective on July 1, 1978?
1. Yes, but only with state approval. A change of plan cannot be implemented until it has been authorized at the state level and any change will be effective only on July 1 or January 1 of each year. No changes will be permitted during the remaining months of each year.
2. No. Exercising the option to go on to the state plan includes acceptance of the classifications of position, maximums, and the pay raises in the plan.
It is necessary to consider the question of a county going from the state plan back to the county plan from the standpoint of the regulations set out in the state plan and manual. LB 539 passed by the Nebraska Eighty-fifth Legislature, 1977, states that the Department of Public Welfare shall provide through its rules that any county board may choose to compensate its welfare employees using the state pay plan. Although this directive (in LB 539) was part of an appropriation bill, rules and regulations granting such an option were validly promulgated pursuant to the directive.
The department promulgated the following rules and regulations (Part V, 5120 and 5121).
 `PROVISIONS FOR COMPENSATION OF PUBLIC WELFARE EMPLOYEES
5120
`State Employees
`Salaries of state public welfare employees are established on the basis of an officially approved schedule as outlined in the Compensation Plan for Classes of Positions on the State Level (See V-5200).
"County Employees
 "The County Board of Public Welfare selects a salary for its county public welfare employees by the adoption of one of the two following plans:
 "1. Selection of a consecutive six-step range from an eleven-step range for professional positions. (See V-5300)."
 "An eight-step range provides the Compensation Plan for clerical positions on the county level (See V-5300). There is no option for selecting a six-step consecutive range for the clerical positions."
 "2. Selection of a county pay plan based on the state pay plan. (See V-5300)."
 "The County Division of Public Welfare will notify the State Division of Personnel and Training in writing of the plan selected."
 "Following the initial adoption of a County Compensation Plan, should the County Board wish to request the adoption of a different plan, it will be necessary to submit a written request, which has been signed by the Chairman of the County Board, to the Chief, Division of Personnel and Training, for review and official action."
 "Approval to revise the County Compensation Plan will depend upon funds available for personal services. A revision cannot be implemented in the county until it has been authorized at the State level."
 "5121 EFFECTIVE DATE FOR REVISED COUNTY COMPENSATION PLAN: Changes to the County Compensation Plan will be effective only on July 1 or January 1 of each year. No changes will be permitted during the remaining months of the year."
Section 5120 quoted above refers to V-5300 of the state plan and manual which sets out the compensation for classes of position on a county level which is a comprehensive plan including eleven steps for salary advancement for professional employees and an eight-step plan for clerical employees. Should the county not desire the six and eight-step combination for counties, the above regulation permits the county to select a plan based on the state pay plan which is set out separately in V-5200.
In regard to the first question of whether a county which has opted to the state plan can go back to the county plan, in viewing this problem it is necessary to consider all of the regulations in context. A reading of V-5121 alone would indicate that changes to the county plan can only be made effective on January 1 and July 1 of each year. But it is necessary to read that regulation which permits amendments in terms of the last paragraph of the preceding regulation which in part reads as follows:
 ". . . should the County Board wish to request the adoption of a different plan, it will be necessary to submit a written request, which has been signed by the Chairman of the County Board, to the Chief, Division of Personnel and Training for review and official action."
Regulation V-5120 further states:
 ". . . A revision cannot be implemented in the county until it has been authorized at the State level."
The above regulations indicate that the ultimate decision as to the adoption of a plan is at the state level, namely, by the Director of the Department of Public Welfare.
In the case of AFSCME, AFL-CIO v. County of Lancaster,196 Neb. 89, this court held that the State Department of Welfare, which provides 98 percent of the county salary funding was a joint employer with the County Divisions of Public Welfare for purposes of collective bargaining. There is language in the case which is particularly appropriate in the instant case:
 ". . . compliance with the State Joint Merit System, effectively takes from the county division much of the prerogative it has with respect to personnel management. The State Joint Merit System is a comprehensive personnel scheme to assure the `efficient and economical administration' of the functions of many state and local agencies. The county boards of public welfare and the State Department of Public Welfare together are treated as one agency under the merit system regulations. See Rule 1(2)(d) Joint Merit System Rules and Regulations.
 "The merit system regulations are incorporated into the State plan and Manual. Under Rule 3 of those regulations, each agency is directed to formally adopt its own comprehensive classification plan for its positions. This the state department has done for itself and for the counties in Part V of the State Plan and Manual, wherein job descriptions are provided for both state department and county division employees."
"Rules 4(1)(a) i and ii read as follows:
 "`i. Any County Board of Public Welfare may recommend to the State Board of Public Welfare a county compensation plan that may differ from the State-wide compensation plan adopted by the State Board of Public Welfare, and such county plan shall be effective on approval by the State Board of Public Welfare. The State Board of Public Welfare shall establish standards including consideration of relevant factors which shall serve as the basis upon which approval of such county compensation plan may be given.'"
 "`ii. The State-wide compensation plan shall be effective in all county public welfare departments in absence of an approved county compensation plan.'"
 "The above rules require state department approval for compensation schedule changes at the county division level." (Emphasis supplied.)
Therefore, any change at the county level must be approved at the state level. The necessity for such requirement in the regulations is obvious. The state department (Welfare) is responsible, under the merit system, for the control of many facets of personnel management including rules relating to application and examination, job appointments, promotions, transfers and demotions, separations, tenure, reinstatement, appeals, and grievances. (SeeAFSCME v. Lancaster County, supra, page 94). It goes without saying that in order to carry out these responsibilities it is necessary that the state department or Director of Public Welfare have the ultimate authority to maintain reasonable consistency in job classification and salaries in the state and counties. An unbridled changing of types of plan or submission of amendments by the counties would nullify the authority and the effect of the director, would result in confusion if not chaos, in job classification, and would place the state department in violation of federal standards which are prerequisite to federal funding.
The Standards for a Merit System of Personnel Administration (pursuant to 5 CFR Part 900 Intergovernmental Personnel Act Programs) and promulgated by the Department of Health, Education and Welfare implement statutory and regulatory provisions requiring the establishment and maintenance of personnel standards on a merit basis in the administration of the various grant-in-aid programs. Following are some of the programs administered by the county divisions of public welfare which are subject to statutory requirements for the establishment and maintenance of personnel standards on a merit basis. Old Age Assistance,42 U.S.C. § 302(a)(5) A; Aid to Families with Dependent Children (AFDC), 42 U.S.C. § 602(a)(5); Aid to the Aged, Blind or Disabled,42 U.S.C. § 1382(a)(5)(A); and Medicaid,42 U.S.C. § 1396(a)(6)(4)(A).
The Standard on Compensation is identical to HEW's language in 45 CFR Part 70.8 which reads as follows:
 "A plan of compensation for all classes of positions will be established and maintained on a current basis. The plan will include salary rates adjusted to the responsibility and difficulty of the work and will take into account the prevailing compensation for comparable positions in the recruiting areas and in other agencies of the government and other relevant factors. It will provide for salary advancement for full-time permanent employees based upon quality and length of service and for other salary adjustments.
 "Compensation in a local agency will be governed by a compensation plan which, at the option of the State, is established by: a local government and covers other local agencies; the State and covers local grant-aided agencies; or the State and covers the agency responsible for State administration of Federal grants."
It should be noted that Subpart F. Section 800.609 of 5 CFR, supra, provides sanctions for noncompliance which include grant termination procedures.
It is therefore clear that substantial compliance in the area of compensation is necessary for federal funding.
As to how long a county can stay on one plan or the other, there is nothing definite on that subject in the regulation. There is only the statement that a change of plan (once authorized by the state department) can be effective only on July 1 or January 1 of each year. Therefore, it is the opinion of this office that the decision is an administrative one to be made by the director based on all of the factual circumstances and in consideration of those factors necessary to maintain a proper consistency of classification and salary in accordance with state and federal standards. The director would, of course, be subject to the July 1 and January 1 limitations.
Thus in answer to Question No. 1 it is the opinion of this office that a county which has opted for the state plan can go back to the county plan, but only with approval of the state department.
In regard to Question No. 2 it is the opinion of this office that if a county or multi-county district exercises its option to accept the state pay plan, that it accepts the plan in its entirety including the statutory raises passed by the Legislature (LB 964, 1978) for the particular fiscal period involved. Any attempt to fragment a plan would be in violation of the regulation and the intent of the Legislature which provided the options, but certainly did not intend to abrogate state and federal labor requirements on equal pay for persons holding similar positions in state service.