**Robert G. DANIELS, et al., Defendants-Appellants,**

v.

**Gordon J. HUTSON and Harriet Hutson, Plaintiffs-Appellees.**

No. 2–385A73.

Court of Appeals of Indiana, Third District.

Feb. 19, 1986.

Rehearing Denied May 8, 1986.

Robert A. Clamme, Clamme and Roberts, Portland, for defendants-appellants.

John Richard Walsh, II, Anderson, for plaintiffs-appellees.

GARRARD, Judge.

Gordon Hutson, Director of the Jay County Department of Public Welfare (Hutson) initiated this litigation against the Board of the Jay County Department of Public Welfare (County Board),[1] seeking a declaratory judgment, injunctive relief and damages stemming from the Board's attempt to remove him from his position as county welfare director.

The trial court conducted a hearing on September 11, 1984, and on September 28, 1984, entered the following findings:

"1. That plaintiff Gordon J. Hutson is a State Service Employee as defined by Indiana Code 4–15–2–3(a)(1) and is the duly appointed and acting Director of the Jay County Department of Public Welfare, Portland, Indiana.

2. That defendants Daniels, Huey, Monroe, Hartvig, and Smith are the duly appointed and acting members of the Board of the Jay County Department of Public Welfare, Portland, Indiana.

3. That defendants met on May 11, 1984 for the purpose of discussing disciplinary action which might be taken against plaintiff Gordon J. Hutson, and that on said date, by a vote of 3 to 2, the defendants did take disciplinary action against plaintiff Gordon J. Hutson by

---

**1.** Hutson's complaint named Robert G. Daniels, Richard Huey, James Monroe, James Hartvig, and Martha Smith, individually and as members of the county welfare board.

which he was to be demoted from position as Director to that of Caseworker.

4. That by seeking to demote plaintiff Gordon J. Hutson from his position as Director to that of Caseworker defendants were in fact attempting to remove said plaintiff from his lawful position, contrary to Indiana Code 12–1–3–3 which provides that the State Board of Public Welfare shall initiate and order the removal of a County Director of Public Welfare.

5. That defendants, individually, and as members of the Board of the Jay County Department of Public Welfare lack legal authority to remove plaintiff Gordon J. Hutson from his position as Director of said Department of Public Welfare, and that the action taken by said defendants on May 11, 1984 by which they attempted to remove said Director from his position is null and void.

6. That the attempt by defendants to remove plaintiff Gordon J. Hutson from the position of Director of the Jay County Department of Public Welfare was an illegal reprisal prohibited by Indiana Code 4–15–10–4.

7. That the temporary injunction heretofore granted on May 15, 1984 should be made permanent."

the trial court then entered judgment granting declaratory and injunctive relief as follows:

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that plaintiff Gordon J. Hutson's removal from office must be initiated and ordered by the State Welfare Board and that defendants, individually and as members of the Board of the Jay County Department of Public Welfare are without legal authority to order the removal of said plaintiff from his position as Director of said Welfare Department, and that the action taken on May 11, 1984 by said defendants was and is null and void.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that defendants Robert G. Daniels, Richard Huey, James Monroe, James Hartvig, and Martha Smith, individually and as members of the Board of the Jay County Department of Public Welfare, their agents, servants, employees, successors, and attorneys, and all persons in active concert and participation with them, are hereby perpetually enjoined from in any manner, either directly or "indirectly, further attempts to remove plaintiff Gordon J. Hutson from his position as Director of the Jay County Department of Public Welfare, and said parties and persons are further enjoined from filing any papers or documents with the Indiana State Personnel Department or the Indiana State Welfare Department which seek and/or claim to show that plaintiff Gordon J. Hutson has been removed from office and said parties and persons are further enjoined from taking any action with regard to the interviewing, appointing, hiring, or placing of a County Welfare Director in the position now held by Gordon J. Hutson."

Appealing from this judgment, the Board contends that the trial court misinterpreted the language of IC 12–1–3–3(a) as giving the power to remove county welfare directors solely to the State Board of Public Welfare (State).

In determining the correctness of the trial court's assessment of the relevant statutory authority, we must keep in mind the established rules of statutory construction. In *County Council of Bartholomew County v. Dept. of Public Welfare of Bartholomew County* (1980), Ind.App., 400 N.E.2d 1187, Judge Robertson summarized them:

"Basic to these rules is that in construing a statute we must give effect to the intention of the legislature which enacted the law. It is also a familiar rule of statutory construction that two statutes dealing with a common subject matter will be read in *pari materia* and so as to harmonize and give effect to each.

There is also a presumption that the legislature in enacting a particular piece of legislation has in mind existing statutes on the same subject. Where the

statutes cannot be harmonized or reconciled, some cases emphasize that the more specific or detailed statute should prevail over the more general statute; others emphasize that the most recent expression of the legislature shall prevail over older ones. It is also recognized that general statutes or rules do not overrule or supersede specific provisions in statutes or rules unless it is clear there was an intent to do so. Also, the repeal of statutes by implication is not a favored result in this State and such a repeal will occur only if it is clear that the statutes are so inconsistent that it must be assumed the legislature did not intend that both remain in force."

400 N.E.2d at 1190 (citations omitted); *see also County Council of Monroe County v. State, etc.* (1980), Ind.App., 402 N.E.2d 1285, 1288–9.

IC 12–1–3–3(a), as part of the comprehensive State Welfare Act (IC 12–1–1–1 et seq.) provides that:

"Sec. 3. (a) *The county board of public welfare shall appoint a county director* of public welfare who shall be appointed solely on the basis of merit from eligible lists established by the Indiana personnel board, and shall be a citizen of the United States. The county director of public welfare shall be the executive and administrative officer of the county department and shall serve as the secretary of the board. *If, in the opinion of the state board, the duties, functions and activities prescribed in this chapter are not performed in compliance with the provisions of this chapter, and in accordance with the rules and regulations prescribed by the state department as provided in this chapter, the state board may, after five (5) days' notice in writing to the county board, order the removal of such director.* The order of removal so issued shall be certified to the county board and to the auditor of the county or counties affected. Upon receipt of such order of removal, the county board shall thereupon remove such director and appoint a successor, and upon its failure to do so, within ten (10) days after the receipt of such order of removal, such office shall become vacant. If the county board shall fail or refuse to appoint a successor within thirty (30) days after such removal or if a vacancy occurring for any other cause shall not be filled within thirty (30) days, the state board shall appoint a county director and the director so appointed shall serve at the pleasure of the state board." (emphasis supplied)

While this language clearly authorizes the State Board to order a county welfare director's removal, the statute does not indicate that such authority is exclusively vested with the State Board. The County Board argues that it too has the authority to remove Hutson from his position as county welfare director either through dismissal or as in the present situation through demotion.

The County Board contends that its authority to demote Hutson from his position as county welfare director stems from the State Personnel Act, IC 4–15–2–1 et seq. The State Personnel Act establishes that any change in a regular employee's position that amounts to a demotion "shall be made only in accordance with the procedure prescribed by section 34 of this chapter for cases of dismissal." IC 4–15–2–24.[2] Section 34, IC 4–15–2–34 provides:

"Sec. 24. An appointing authority or his designee may dismiss for cause any regular employee in his division of the

2. The relevant portion of IC 4–15–2–24 reads as follows:

"Sec. 24. An appointing authority may at any time assign an employee from one position to another position in the same class or rank in his division of the service. Upon making such an assignment the appointing authority shall immediately give written notice of his action to the director.

\* \* \* \* \* \*

Any change of a regular employee from a position in one class to a position in a class of a lower rank shall be considered a demotion and shall be made only in accordance with the procedure prescribed by section 34 of this chapter for cases of dismissal. An employee thus demoted shall have the right to appeal under section 35 of this chapter."

service. No dismissal of a regular employee shall take effect, unless, at least ten (10) days before the effective date of the dismissal, the appointing authority or his designee gives to the employee a written statement of the reasons for the dismissal and files a copy of the statement with the director. The employee shall have an opportunity to file with the appointing authority a written statement regarding the proposed dismissal, a copy of which shall be filed with the director. A regular employee who is dismissed shall have the right to appeal under section 35 of this chapter."

Therefore, to determine whether a county welfare board has the authority through the State Personnel Act to demote a county welfare director we must determine whether a county welfare board is an appointing authority, whether the county welfare director is considered a regular employee, and whether the county welfare board and county welfare director are in the same division of the service.

Directors of the county departments of public welfare are explicitly included in the state merit system established by the State Personnel Act as public service employees. IC 4–15–2–3(a)(1). *See also County Dept. of Public Welfare of Lake County v. Stanton* (S.D.Ind.1982), 545 F.Supp. 239, 244. County welfare directors are appointed by the county welfare board from eligibility lists maintained by the state personnel board. IC 12–1–3–3(a). The pertinent portion of IC 12–1–3–3(a) reads:

"Sec. 3. (a) The county board of public welfare shall appoint a county director of public welfare who shall be appointed solely on the basis of merit from eligible lists established by the Indiana personnel board, and shall be a citizen of the United States."

Since a county welfare board is thus authorized by law to appoint an individual to a position within the state service as county welfare director, a county welfare board is an appointing authority under the State Personnel Act.[3]

The district court, in *Stanton*, went on to conclude:

"Once they are appointed, employees of the county welfare department are compensated, classified, promoted, disciplined and discharged according to the same standards and procedures in effect for employees of state agencies covered by the state personnel code."

545 F.Supp. at 244. *See also* IC 4–15–2–4. As previously indicated the *Stanton* opinion and IC 4–15–2–3(a)(1) consider county welfare directors to be employees of the county welfare departments. As such the standards and procedures established by or pursuant to the State Personnel Act are applicable to county welfare directors. Further supporting this conclusion is IC 12–1–3–3(a), wherein a county welfare board is required to appoint its county welfare director from eligibility lists established by the Indiana personnel board pursuant to IC 4–15–2–18, based upon merit principles. Inclusion on an eligibility list presumes that an individual has been found qualified by an entrance test. IC 4–15–2–3(j). Entrance tests as well as other hurdles found in the State Personnel Act, such as the certification of eligible persons (IC 4–15–2–19), the completion of the working test period (IC 4–15–2–21) and any minimum qualifications established in a classification plan pursuant to IC 4–15–2–9, are designed to effectuate the express purpose of the Act to "insure the appointment of qualified persons to the state service ... solely on the basis of proved merit...." IC 4–15–2–1. The designation given to individual employees who have satisfied the foregoing standards is "regular employee."[4] While the record does not permit us

---

**3.** An appointing authority is defined by IC 4–15–2–3(d) as:

"(d) 'Appointing authority' means the head of a department, division, board, commission, individual, or group of individuals who has the power by law or by lawfully delegated authority to make appointment to positions in the state service."

**4.** A regular employee is specifically defined by IC 4–15–2–3(n) as follows:

"(n) 'Regular employee' means an employee who has met the minimum qualifications,

to conclude that Hutson himself was a regular employee, nothing in the provisions of the State Personnel Act would appear to limit any given county welfare director from attaining such status.

As to the division of the service, it is clear that the Jay County board, county director and any assistants are all members of the Jay County Department of Public Welfare as established under IC 12–1–3–1 et seq. The county departments are divisions or branches of the larger State Department of Public Welfare within the meaning attributed to the division of the service language by IC 4–15–2–3(e). This definition of "division of the service" further indicates that all the positions in a particular division should be under the same appointing authority. We do not believe this particular definition can be precisely applied to IC 4–15–2–34, concerning demotions and dismissals of county welfare employees since to do so would contravene the intention of the legislature in enacting the State Personnel Act.

The statement of general purpose as found in the State Personnel Act reflects the importance of fairness and merit principles in state service employment:

"[The State Personnel Act] shall be liberally construed to effectuate its policies and purposes to increase governmental efficiency, to insure the appointment of qualified persons to the state service hereinafter defined solely on the basis of proved merit, to offer any person a fair and equal opportunity to enter such state service, and to afford the employees in such state service an opportunity for public service and individual advancement according to fair standards of accomplishment based upon merit principles, and to which ends there is by this chapter established *a personnel system based on merit and scientific methods relating to the appointment, compensation, promotion, transfer, lay off, re-*

passed the examination, completed the working test period, and has been certified by the ap-

*moval and discipline of employees* and to other incidents of state employment." IC 4–15–2–1 (emphasis supplied). *See also County Department of Public Welfare of Lake County v. American Federation of State, County and Municipal Employees Indiana Council 62* (1981), Ind.App., 416 N.E.2d 153, 157 (Staton, J. concurring). As can be seen from this statement of general purpose, all incidents of state employment, including discipline and dismissal, are to be governed by merit principles.

Under the State Welfare Act, the Board of County Commissioners is responsible for appointing the county welfare board (IC 12–1–3–2(a)), while the county welfare board is responsible for appointing the county welfare director (IC 12–1–3–3(a)). The director is, in turn, responsible for appointing his assistants, although subject to the approval of the county welfare board. IC 12–1–3–7. An unduly restrictive interpretation of the division of the service language as found in the dismissal section (IC 4–15–2–34) would remove all county welfare employees from that provision. Thus, the requirement that dismissals and demotions be made only for cause would not apply, and this could negate the consideration of merit and an employee's qualifications when a removal or demotion is considered. Furthermore, any appeal (pursuant to IC 4–15–2–35) by a county welfare employee, who considered herself wrongfully dismissed or demoted, would be hampered were the procedure for dismissal inapplicable as written notice of the reasons for the disciplinary action would not be required.

The only reasonable interpretation of the division of the service language employed in the dismissal procedure section is as a limitation upon the scope of each appointing authority's power to discipline those employees within his particular division or branch. In other words, appointing authorities should not discipline employees outside the authority's own area. This inter-

pointing authority for that class of positions."

pretation further permits the "for cause" and other procedural safeguards found in the dismissal procedure section to apply to those county welfare employees who are a part of the state service. Finally, efficiency and the merit principles cited as primary purposes for the adoption of the merit system under the State Personnel Act are preserved as to the discipline or removal of county welfare employees.

This reading of the State Personnel Act leads us to the conclusion that a county welfare board is authorized to demote its county welfare director pursuant to the procedure outlined for dismissal in IC 4–15–2–34. Under that section the action taken by the appointing authority must be for cause and must follow certain procedural guidelines regarding notice and an opportunity for the employee to respond.

The next step in our inquiry must focus on whether the authority of the county welfare board to discipline the county welfare director found under the State Personnel Act is in conflict with the clear grant of authority to the State Welfare Board to order the removal of a county welfare director under section IC 12–1–3–3(a) of the State Welfare Act.

Since the two statutes deal with a common subject matter they should be read so as to harmonize them and give effect to each if that can reasonably be done. The disciplinary authority of the county welfare board and the state welfare board over the county welfare director can be harmonized via the concept of "joint employers" as articulated by Judge Staton in *County Department of Public Welfare of Lake County, supra:*

"Many aspects of personnel management, such as compensation, hours, position classification, grievance resolution, and discipline and discharge procedures, are subject to state control under the state merit system. IC 4–15–2–5 et seq. County welfare departments are under a statutory duty to control personnel management in accordance with state regulations. This is not to say that county welfare departments function merely as conduits for the state in administering the employment terms of the state merit system. County welfare departments retain some managerial authority over terms of employment not regulated by the state. Also, county welfare departments exercise their discretion in controlling terms of employment for which the state has established minimum and maximum guidelines, such as compensation. Thus, it is evident that county welfare departments and the State Personnel Board (through the State Department of Public Welfare) function as an integrated enterprise in the control of the terms of employment for county-level welfare employees. Each of these governmental entities performs a specified role of personnel management. I view these interrelated governmental entities as 'joint employers' of county-level welfare employees, as have other jurisdictions when confronted with the same personnel management issue. *See American Federation of State, County and Municipal Employees, AFL-CIO v. County of Lancaster, Division of Public Welfare* (1976), 196 Neb. 89, 241 N.W.2d 523; *County of Ulster v. CSEA Unit of Ulster County Sheriff's Department* (1971), 37 App. Div.2d 437, 326 N.Y.S.2d 706; *Costigan v. Philadelphia Finance Department Employees Local 696, American Federation of State, County and Municipal Employees, AFL-CIO* (1975), 462 Pa. 425, 341 A.2d 456."

416 N.E.2d at 157 (concurring opinion).

Considering the county welfare board and the state welfare board as joint employers of county welfare directors was in fact mandated by the legislature in the original text of IC 12–1–3–3 of the Public Welfare Act, as follows:

"Duties of the county boards. The county board of public welfare shall appoint a county director of public welfare who shall be appointed solely on the basis of merit, who shall have been a resident of such county for a period of at least two years prior to the date of his appointment unless a qualified person

cannot be found in the county, who shall be the executive and administrative officer of the county board and who shall serve as the secretary of the board. *Except as hereinafter otherwise provided, the director shall serve at the pleasure of the board. If, in the opinion of the state board, the duties, functions and activities prescribed in this act are not performed in compliance with the provisions of this act and in accordance with the rules and regulations prescribed by the state department, as provided in this act, the state board may, after five days' notice in writing to the county board order the removal of such director."*

Acts 1936 (SS), c. 3, s. 20 (emphasis supplied). The deletion of the language which had the county director serving at the pleasure of the county board was accomplished in 1947, after the enactment of the State Personnel Act in 1941. A reasonable conclusion is that the deletion was made not to divest the county board of their disciplinary authority over directors completely but to limit the exercise of that authority under the State Personnel Act wherein fairness and the merit system apply.

The trial court's conclusion that only the state welfare board can order Hutson's removal as director of the Jay County welfare department is erroneous. Furthermore, the trial court's injunction prohibiting the county welfare board from attempting to remove Hutson from his office, being based on a misinterpretation of the relevant statutory authority, must be vacated.

In summary, the Jay County welfare board has the authority pursuant to IC 4–15–2–34 to demote or dismiss Hutson from his position as the Jay County welfare director. However, such action must be taken only for cause and in compliance with the procedure as outlined in IC 4–15–2–34. Failure to show cause or follow the necessary procedure could be raised by Hutson pursuant to the complaint procedure, IC 4–15–2–35, should the county welfare board pursue his demotion.[5] *See generally Rockville Training Center v. Peschke* (1983), Ind.App., 450 N.E.2d 90 (providing a complete analysis of the complaint procedure). The complaint procedure would still be available to Hutson since the trial court's injunction did preserve the status quo, in that Hutson has remained county welfare director pending the outcome of this appeal. The complaint procedure becomes available to a regular employee when his employment status is involuntarily changed.

In light of our determination we need not address county welfare board's arguments concerning exhaustion of administrative remedies and sufficiency of the evidence as it relates to Hutson's invocation of the State Employees' Bill of Rights, IC 4–15–10–1 et seq.[6]

Reversed.

STATON, P.J., and HOFFMAN, J., concur.

5. In his appellate brief Hutson contended that the county board failed to follow the proper dismissal procedure. Our review of the record supports this contention in that while Hutson himself may have received timely notice, it does not appear that the state personnel director was ever notified. If Hutson is improperly dismissed the appeal provision, IC 4–15–2–35, authorizes reinstatement to former position with back pay.

6. Our reversal puts the parties in the position they were in at the time Hutson initiated his lawsuit and was granted the temporary injunction blocking his demotion. Should the Jay County Board proceed with the demotion, Hutson should pursue his administrative remedies through IC 4–15–2–35. The purported violation of the State Employees' Bill of Rights should be raised through this procedure since it is a factual determination particularly suited to administrative adjudication. *Indiana Ed. Employment Relations Board v. Bd. of School Trustees* (1978), 176 Ind.App. 680, 377 N.E.2d 414, 416.