HALL COUNTY PUBLIC DEFENDERS ORGANIZATION (HCPDO), APPELLEE, V. COUNTY OF HALL, A POLITICAL SUBDIVISION, AND THE HALL COUNTY BOARD OF SUPERVISORS, APPELLANTS.

571 N.W.2d 789

Filed January 16, 1998.   No. S-96-594.

Jerry L. Pigsley, of Harding, Shultz & Downs, and Jerom E. Janulewicz and Mark J. Young, Deputy Hall County Attorneys, for appellants.

Edward F. Pohren, of Dwyer, Smith, Grimm, Gardner, Lazer, Pohren & Rogers, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

The appellee, Hall County Public Defenders Organization (HCPDO), filed an election petition with the Nebraska Commission of Industrial Relations (CIR), seeking an election recognizing the HCPDO as the bargaining unit for the deputy public defenders in the Hall County public defender's office. Although Hall County and the Hall County Board of Supervisors were named as respondents, Gerard A. Piccolo, the Hall County public defender, was not named. The CIR granted the election, and the county appeals, contending that the CIR erred in various respects, including not finding that Piccolo was a necessary party. Because there are issues regarding wages and working conditions over which both the county board and Piccolo have control, we conclude that Piccolo is a necessary party and reverse, and remand with directions to dismiss.

## BACKGROUND

During the 1995-96 budget process, Piccolo sought wage increases for the four deputy public defenders in his office in order to equalize the wages of the deputy public defenders with the wages of attorneys in the Hall County Attorney's office. The county board refused the wage increases. As a result, the four deputy public defenders filed an election petition with the CIR, seeking an election to recognize the HCPDO as their bargaining unit.

The county refused to recognize the HCPDO as a bargaining unit and answered with three affirmative defenses: (1) Piccolo, as the employer of the deputy public defenders, was a necessary

party to the action; (2) the showing of interest authorizations signed by the deputy public defenders were invalid because Piccolo was involved in seeking union representation; and (3) the petition did not exclude supervisors from the bargaining unit.

The record indicates that Piccolo receives operating policies, personnel policies, and budget requirements from the county board. However, the record also indicates that Piccolo is not required to follow the personnel policies that he receives. For example, Piccolo has chosen not to use the performance evaluations and other documents that are suggested by the county board. In addition, some items, such as the policies procedure manual, are made and adopted by the county officials, not the county board. Piccolo also withdrew his office from representing paternity and child support cases without consulting the county board.

Piccolo testified that the county sets the salaries for the employees in his office and that the county board had denied his request for an increase in salaries. Piccolo also testified that the county board has traditionally given the elected public defender a lot of discretion in determining office policies but that he believes that technically the county has the power to set the working conditions, wages, and benefits of the employees in his office.

Robert Leslie, a member of the county board, testified that the public defender's office is subordinate to the county board by the amount of money that is budgeted and that this was the only control the county board had over the office. Leslie further testified that the county board has not hired, fired, transferred, promoted, laid off, recalled, rewarded, disciplined, or assigned work to the employees of the public defender's office or made recommendations to the elected public defender regarding these things. Leslie also testified that the county fixes the salary budget for the public defender's office, but that the public defender, Piccolo, decides how to apportion that budget among the deputies in his office. Leslie further testified that prior to the filing of the election petition, he was unaware of a possible difference in statutes regarding the setting of salaries for the public defender's office as compared to the offices of other elected officials.

The CIR concluded that Piccolo was not a necessary party to the action because of this court's holding in *Sarpy Co. Pub. Emp. Assn. v. County of Sarpy*, 220 Neb. 431, 370 N.W.2d 495 (1985), and Neb. Rev. Stat. § 23-3403 (Reissue 1991). The CIR, relying on *Sarpy Co. Pub. Emp. Assn.*, determined that Piccolo did not have the authority to set salaries for his deputies, making the county board the appropriate body to represent the employer in the bargaining process. Based on its findings, the CIR granted an election, holding that the HCPDO had made a sufficient showing of interest to entitle it to an election and that the appropriate bargaining unit would be all Hall County assistant public defenders.

## ASSIGNMENTS OF ERROR

The county assigns that the CIR erred in (1) determining that two deputy public defenders were not supervisors and including them in the same bargaining unit as employees they supervised, (2) deciding that the showing of interest authorizations executed by the deputy public defenders were not invalid because of Piccolo's involvement in seeking union representation of the employees in his office, and (3) deciding that Piccolo is not a necessary and indispensable party respondent in the case. Because of our conclusion, we address only the necessary party issue.

## STANDARD OF REVIEW

The standard of review by this court in reviewing a decision of the CIR is whether the CIR's order is supported by substantial evidence, whether the CIR acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. *Nebraska Pub. Emp. v. City of Omaha*, 235 Neb. 768, 457 N.W.2d 429 (1990); *Douglas Cty. Health Dept. Emp. Assn. v. Douglas Cty.*, 229 Neb. 301, 427 N.W.2d 28 (1988).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Continental Western Ins. Co. v. Swartzendruber, ante* p. 365, 570 N.W.2d 708 (1997); *Wolgamott v. Abramson, ante* p. 350, 570 N.W.2d 818 (1997); *Whalen v. U S West Communications, ante* p. 334, 570 N.W.2d 531 (1997).

## ANALYSIS

### PICCOLO AS NECESSARY PARTY

The county contends that Piccolo should have been joined as a necessary party to the action because he is an "employer" of the deputies in his office as contemplated by the Industrial Relations Act, Neb. Rev. Stat. § 48-801 et seq. (Reissue 1993 & Cum. Supp. 1996).

An indispensable or necessary party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents a court from making a final determination concerning the controversy without affecting such party's interest. *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995).

Section 48-801(4) of the Industrial Relations Act defines employer as "the State of Nebraska or any political or governmental subdivision of the State of Nebraska . . . ." Employee is defined as including "any person employed by any employer." § 48-801(5). Under § 48-801(4) and (5), it is clear that the county is the employer of the members of the HCPDO because between Piccolo and the county, only the county is a political subdivision of the State of Nebraska. Neither the county board nor the elected official falls under this definition. However, as this court pointed out in *Sarpy Co. Pub. Emp. Assn. v. County of Sarpy*, 220 Neb. 431, 370 N.W.2d 495 (1985), the question goes beyond who the defined employer is. Rather, because the county as a political subdivision does not have a physical voice, it must speak through a body or individual that is authorized to speak on its behalf. Accordingly, "[t]he more appropriate question is who or what body is authorized to represent the employer." *Id.* at 433, 370 N.W.2d at 497.

In *Sarpy Co. Pub. Emp. Assn.*, we addressed the question of who, between the county board and the elected county officials, was the appropriate entity to speak on behalf of the county in collective bargaining. The CIR had determined that a joint employer relationship existed, but this court disagreed and reversed. In *Sarpy Co. Pub. Emp. Assn.*, we relied on our decision in *Bass v. County of Saline*, 171 Neb. 538, 106 N.W.2d 860 (1960) (holding that absent evidence that salaries recommended by county officials under Neb. Rev. Stat. § 23-1111 (Reissue

1991) were arbitrary, unreasonable, or capricious, county board was without authority to disapprove official's salary request). Thus, we determined that absent a specific statute, the elected county officials were the appropriate individuals to represent the county in negotiating with the employees in their offices. However, in regard to the county assessor, we determined that because a specific statute applied that acted to shift the ability to set salaries to the county board, the county assessor was not to be considered the sole appropriate person to speak on behalf of the county in the collective bargaining process. Relying on the *Sarpy Co. Pub. Emp. Assn.* decision, this court in *State ex rel. Garvey v. County Bd. of Comm.*, ante p. 694, 573 N.W.2d 747 (1998), determined that § 23-3403, like the statute applicable to the county assessor in *Sarpy Co. Pub. Emp. Assn.*, acted to shift the authority to set salaries for the public defender's office to the county board. While it is clear from *Sarpy Co. Pub. Emp. Assn.* and *State ex rel. Garvey* that the ability to set salaries for the public defender's office rests with the county board, it is not clear whether this requires the public defender to engage in collective bargaining together with the county board or whether the county board is the sole body to speak on behalf of the county during collective bargaining. Although *Sarpy Co. Pub. Emp. Assn.* discussed the issue, it did not conclusively answer the question.

This court has previously applied private sector cases controlled by the National Labor Relations Act in order to determine whether or not a joint employer relationship exists between two possible employers. In *American Fed. S., C., & M. Emp., AFL-CIO v. County of Lancaster*, 196 Neb. 89, 241 N.W.2d 523 (1976), we recognized that the National Labor Relations Board considers several nominally separate business entities to be a single employer where they compose an "integrated enterprise." The controlling criterion in making this determination is whether there are interrelations of operations, common management, and centralized control of labor relations. *American Fed. S., C., & M. Emp., AFL-CIO v. County of Lancaster, supra.*

In *American Fed. S., C., & M. Emp., AFL-CIO*, we determined that specific statutory and regulatory provisions acted to

take from the county board of welfare much of the prerogative it had with respect to personnel management because the county employees in the case were included under a joint merit system whereby the county board of welfare and the state department of welfare were treated as one agency. In addition, extensive regulations acted to require state approval of job-related matters such as applications and examinations, job appointments, promotions, transfers, demotions, separations, tenure, reinstatements, and appeals of grievances. From these facts, we found that centralized control existed and concluded that it would be inappropriate to require only the county to bargain with employees of the public welfare department, because the county had no control over many areas usually embraced by labor agreements. Rather, much of that control had been transferred to the state by statute.

The statutory scheme in the instant case is not as extensive as the statutory and regulatory scheme seen in *American Fed. S., C., & M. Emp., AFL-CIO*. In the instant case, a specific statute, § 23- 3403, has acted to shift control over the setting of salaries to the county board. However, the fact that the county board has the authority to disapprove a public defender's budget request does not mean the county board has authority to control other aspects of the public defender's office. Rather, the county sets the salaries for the public defender's office while the public defender, as an independent elected official, controls much of the non-salary-related working conditions. For example, the record shows that Piccolo decides which personnel policies to use and chose to have his deputies withdraw from paternity and child support cases without obtaining prior approval of the county board. As the elected official, Piccolo is also the person who has the authority to do such things as determine working hours, approve vacations, and assign work to employees. The record indicates that the county board does not hire, fire, or promote Piccolo's employees. Thus, it is likely there are bargainable issues over which only the public defender, Piccolo, has control.

Of particular importance is the fact that Piccolo and the county board exercise common control over the key item of contention in this case, the salaries of the deputy public defend-

ers. While the county board has authority to set salaries for the deputy public defenders by having the authority to disapprove or reduce a public defender's budget request, the record reflects that the county board does not explicitly dictate how much each individual deputy public defender is paid. Rather, the county board sets the total budget, and Piccolo determines the individual salaries among the deputies. Thus, Piccolo has the ability to pay some deputies more than others and can allocate the budget as he sees fit.

In the instant case, a joint employment relationship is necessary because neither party acting alone can effectively bargain regarding all of the compensation and working-condition issues that are normally embraced by labor agreements. Therefore, we conclude that the CIR erred in its determination that Piccolo was not a necessary party. The election to determine a bargaining agent held pursuant to the order of the CIR is hereby set aside. We reverse the order of the CIR and remand the cause to the CIR with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.