# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2388

_____

Patricia J. Davis, an Individual; Patricia A. Duncan, an Individual; Jeffrey J. Goergen

*Plaintiffs - Appellants*

v.

J. Joe Ricketts, an Individual; Hugo Enterprises, LLC, a Nebraska Limited
Liability Company, formerly known as Ricketts Enterprises, LLC; Opportunity
Education Foundation, an Iowa Non-Profit Corporation

*Defendants - Appellees*

ADP TotalSource, Inc., a Florida Corporation

*Defendant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 15, 2014
Filed: August 27, 2014

_____

Before RILEY, Chief Judge, BEAM and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellants Patricia J. Davis, Patricia A. Duncan, and Davis's son, Jeffrey J. Goergen, brought suit against Opportunity Education Foundation (OEF) and Hugo Enterprises, LLC (Hugo) under Title VII of the Civil Rights Act of 1964 and the Nebraska Fair Employment Practices Act (NFEPA), alleging sexual harassment and retaliation. Davis and Duncan also sued Joe Ricketts, the Chief Executive Officer of OEF and owner of Hugo, for tortious interference with their expectation of continued employment. The district court[1] dismissed the tortious interference claim, finding Davis and Duncan had failed to state a claim against Ricketts because he was acting on behalf of OEF and thus could not be a third party interferer. The district court later granted OEF and Hugo's motion for summary judgment, concluding that OEF did not have the requisite number of employees to be considered an employer under Title VII and the NFEPA and that OEF and Hugo were not integrated employers to meet the numerosity requirement under the statutes.[2] We affirm.

I.

We recite the facts in the light most favorable to the appellants, the nonmoving parties. Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 437 (8th Cir. 2007). Ricketts established OEF, an Iowa nonprofit corporation with its principal place of business in Omaha, Nebraska. It provides educational support and materials to schools in developing countries. Ricketts also owns, funds, and is managing member of Hugo, a for-profit limited liability company organized under the law of Nebraska with its principal place of business in Denver, Colorado. Hugo provides some

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

[2]ADP TotalSource, Inc. was also a named defendant in the original Complaint. The parties later filed a joint stipulation and motion to dismiss ADP TotalSource as a defendant, and the court dismissed ADP TotalSource.

administrative infrastructure for Ricketts' various for-profit and nonprofit enterprises, including OEF.

The Appellants were all employed by OEF in different capacities. In 2009, Davis and Duncan complained internally that OEF's Chief Operating Officer was sexually harassing them. Both Davis and Duncan were thereafter terminated. About a year later, Goergen was also terminated. Davis and Duncan filed suit, asserting that OEF and Hugo subjected them to a hostile work environment and quid pro quo sexual harassment in violation of Title VII, retaliated against them by perpetuating the hostile work environment and by firing them in violation of Title VII and the NFEPA, and retaliated against Davis by terminating Goergen in violation of Title VII and the NFEPA. They also asserted that Ricketts violated Nebraska common law by tortiously interfering with Davis's and Duncan's expectation of continued employment.

OEF, Hugo, and Ricketts moved to dismiss the Complaint. The district court granted the motion in part, finding that Davis and Duncan had failed to state a claim against Ricketts because the allegations against him were "conclusory and 'a formulaic recitation of the elements of a cause of action,'" Davis and Duncan did not show that a claim could be brought against the employer's CEO, and the action would undermine precedent holding that supervisors are not individually liable under Title VII.

The Appellants then filed their First Amended Complaint, adding Goergen as a plaintiff and including him on the retaliation claims. At the conclusion of discovery, Hugo and OEF filed a motion for summary judgment as to the remaining claims under Title VII and the NFEPA. The district court granted the motion, holding that the undisputed facts demonstrated OEF at all times had fewer than 15 employees and that OEF and Hugo were not a joint, consolidated, or integrated employer. Thus, their

-3-

employees could not be grouped for the purposes of the numerosity requirements in Title VII and the NFEPA. The Appellants appeal.

## II.

The Appellants argue that the district court erred in granting summary judgment to Hugo and OEF because the entities are integrated and in dismissing their claim against Ricketts because they stated a plausible claim that he tortiously interfered with their business relationships. Because we find that the undisputed facts in the record show that OEF and Hugo are not an integrated enterprise and because we agree with the district court that Ricketts, as CEO of OEF and acting on behalf of OEF cannot be a third party interferer, we affirm the district court.

## A. Integrated Enterprise

We review a district court's grant of summary judgment de novo. Holland v. Sam's Club, 487 F.3d 641, 643 (8th Cir. 2007). We will affirm the grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Title VII imposes liability for employment discrimination only on an "employer." 42 U.S.C. § 2000e-2(a). An employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees [during a certain time period.]" 42 U.S.C. § 2000e(b); see also Neb. Rev. Stat. § 48-1102(2) (utilizing a similar definition for employer). The parties agree that OEF did not employ 15 or more employees. However, in certain circumstances, employees of separate entities may be combined for purposes of meeting the employee numerosity requirement. Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1184 (8th Cir. 1998). The Nebraska legislature patterned the NFEPA after Title VII, and Nebraska courts consider federal court decisions when construing its language. Bluff's Vision

Clinic, P.C. v. Krzyzanowski, 555 N.W.2d 556, 559 (Neb. 1996). Thus, we analyze the Title VII and NFEPA claims together.

An integrated enterprise is "one in which the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party." EEOC Compliance Manual §2-III(B)(1)(a)(iii); see also Baker v. Stuart Broad. Co., 560 F.2d 389, 391-92 (8th Cir. 1977) ("[The entities] are of such coagulation that they must be considered one."). In determining whether separate entities should be treated as an integrated enterprise, we consider the following factors: (1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) the centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities. Baker, 560 F.2d at 391-92; see also Sandoval v. Am. Bldg. Maintenance Indus., Inc., 578 F.3d 787, 796 (8th Cir. 2009); EEOC Compliance Manual §2-III(B)(1)(a)(iii). In situations where the court is asked to disregard the separate and distinct form of legal entities, the standards are narrow and rigorous, imposing a presumption of corporate separateness. See Robinson v. Terex Corp., 439 F.3d 465, 468 (8th Cir. 2006) (noting that, in the context of a parent-subsidiary relationship, "[s]eparate corporate entities should be disregarded only when there is some abuse of the privilege to operate as separate corporations to the detriment of a third party"); see also Brown v. Fred's, Inc., 494 F.3d 736, 739 (8th Cir. 2007); In re B.J. McAdams, Inc., 66 F.3d 931, 937 (8th Cir. 1995) (applying the alter-ego doctrine).

The interrelation of operations factor examines whether the two entities share managers and personnel, payroll, insurance programs, office space, and equipment. Sandoval, 578 F.3d at 793; EEOC Compliance Manual §2-III(B)(1)(a)(iii). It also requires evaluation of whether the entities are operated as a single unit, Sandoval, 578 F.3d at 796, and whether the entities' functions and purpose are similar or distinct. See Grace v. USCAR, 521 F.3d 655, 665 (6th Cir. 2008); see also Engelhardt v. S.P. Richards Co., 472 F.3d 1, 6-7 (1st Cir. 2006) (finding no interrelation of operations

when companies had separate headquarters, human resource departments, records and record keeping, and work sites which fulfilled distinct functions). The record is devoid of evidence that Hugo and OEF share the same personnel and managers; instead the evidence shows that OEF employees report to and are supervised by OEF management employees and that Hugo employees report to and are supervised by Hugo management employees. Each entity is responsible for making day-to-day business decisions for their own enterprise, including creating their own budgets and purchasing supplies. See Baker, 560 F.2d at 391 (finding single employer status when, among other factors, the same person had day-to-day control of the entities). Hugo and OEF are not run as a single unit, as they each have a separate function and purpose. OEF is a charitable organization that provides educational support and materials to schools in developing countries. Hugo is a limited liability corporation that provides administrative services to various nonprofit entities and operates as a holding company for Ricketts' for-profit entities. OEF and Hugo occupy different office space in two different states and are incorporated under different states' statutes.

Hugo provides administrative services to OEF because OEF does not have an administrative infrastructure. For example, Hugo provides accounts payable, accounts receivable, payroll administration, benefits coordination, and some legal and human resources services to OEF. In Brown, that the parent company processed payroll and other services for the subsidiary-employer was found insufficient to overcome the strong presumption of corporate separateness. 494 F.3d at 739-40. Similarly, these two corporations, not in a parent-subsidiary relationship, do not have sufficiently interrelated operations to be considered a single entity.

"The degree to which the entities share common management includes whether the same individuals manage or supervise the different entities or whether the entities have common officers and boards of directors." Sandoval, 578 F.3d at 793. There is no evidence that the same persons were involved in management of the two entities. While Ricketts serves as CEO of OEF and is the sole owner of Hugo and some

individuals serve as officers and as directors of both OEF and Hugo, Hugo did not direct or oversee OEF's corporate decisionmaking or facilities, and vice versa. See Grace, 521 F.3d at 665 (finding no evidence of common management even though the two companies had a shared relationship with the same person).

The entities' labor relations are largely separate. OEF sets its own employment policies, work schedules, and salaries and is responsible for hiring and firing its own employees. OEF employees are paid by OEF, not by Hugo. Hugo is likewise responsible for hiring, firing, and disciplining its employees. Hugo also controls the job functions and responsibilities of its employees. Unlike the entities in Sandoval, where the parent exercised "significant control, through the involvement or oversight of [the subsidiary's] personnel," id. (internal quotation marks omitted), the Appellants allege little more than a vague "centralized plan" to fire them that involved persons at Hugo in an attempt to link Hugo to OEF's labor relations and the alleged discriminatory actions. However, those persons from Hugo also had various roles on the board of OEF. The Appellants fail to demonstrate or allege that these persons, specifically Ricketts who fired them, were acting in a Hugo capacity when making any employment decisions involving them.

OEF does not have its own human resources department, in fact, Ricketts testified that "[he is] the HR department at Opportunity Education." Mark Simmons, employed by Ricketts personally, serves as Ricketts' Chief of Staff and also manages various labor relations administrative functions for Ricketts' companies, including OEF and Hugo. His responsibilities include managing employee health benefits, administering payroll, and maintaining personnel files. When Appellants reported their problems at OEF, they contacted Alan Barkely, employed by OEF as Executive Director. Though Ricketts is involved in the labor relations of both entities, the record reflects that the entity responsible for making final decisions regarding employment matters related to the Appellants was OEF.

"The degree of common ownership or financial control asks whether one company owns the majority or all shares of the other and if the entities share common officers or directors." Sandoval, 578 F.3d at 793. These two entities share common control and have a common source of funding. Ricketts owns Hugo, controls OEF, and funds both. OEF is a charitable organization, so it has no shareholders or owners. Ricketts founded OEF and is its sole source of funding, contributing $5 million a year. He is OEF's treasurer and sole voting director. He also is the sole stockholder of Hugo. Although the entities' sources of funding are the same, Hugo does not own OEF, or vice versa. Each independently manages its own finances, OEF files its own tax return and Hugo reports on Ricketts' tax return. A single source of financial support by itself does not indicate that the enterprises are integrated. Furthermore, the fact that Ricketts controls two distinct corporations does not make them integrated for the purposes of Title VII. See Morrison v. Magic Carpet Aviation, 383 F.3d 1253, 1257 (11th Cir. 2004) ("As a matter of law, we do not believe that common ownership of two corporations is enough for a jury to conclude that there were integrated into one operation for FMLA purposes.").

Although the Appellants produced evidence establishing common control and financial backing, this is insufficient to establish single employer status and overcome the strong presumption of organizational separateness which is necessary to find that they were so integrated that they were, in effect, one entity. The record evidences some, but little, interrelation of operations between the two companies and little if any shared control of labor relations. Artis, 161 F.3d at 1184 (finding some overlap in the entities' control of labor relations, but not enough to make the two separate entities the same). Although there may be occasions in which it is proper to disregard two separate corporate entities for the purpose of finding the jurisdictionally required number of employees under Title VII and the NFEPA, see, e.g., Baker, 560 F.2d at 392, this is not such a case, and we conclude that OEF and Hugo are separate enterprises and therefore should not be integrated for purposes of 42 U.S.C.

§ 2000e(b) and Nebraska Revised Statute § 48-1102(2). Cf. Artis, 161 F.3d at 1184 (noting that the court should consider all factors, with no particular factor controlling).

Because we agree with the district court that Hugo and OEF are not sufficiently integrated enterprises to combine their employees to meet the statutory numerosity requirement, the Appellants' Title VII and NFEPA claims cannot survive and we affirm the grant of summary judgment.

## B. Tortious Interference

We review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6). Bell v. Pfizer, Inc., 716 F.3d 1087, 1091 (8th Cir. 2013). We have supplemental jurisdiction over Davis's and Duncan's state law claim, 28 U.S.C. § 1367, and utilize Nebraska law in our analysis. Under Nebraska common law, the elements of a tortious interference claim are as follows: "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." Huff v. Swartz, 606 N.W.2d 461, 466 (Neb. 2000) (internal quotation marks omitted).

In Huff, the Nebraska Supreme Court held that a supervisor or other coemployee could become a "third person" acting as an interferer and subject to liability for tortious interference of another's business relationship. Id. at 467. Specifically, a tortious interference claim may be actionable if the coemployee's actions were "committed in furtherance of some purpose other than the lawful purposes of the employer." Id. at 468. The court cited favorably to the Nebraska appellate court's analysis in Hoschler v. Kozlik, see id., which quoted a Minnesota Supreme Court case reasoning that, "[t]o allow the officer or agent to be sued and to be personally liable would chill corporate personnel from performing their duties and

would be contrary to the limited liability accorded incorporation," 529 N.W.2d 822, 828 (Neb. 1995) (quoting Nordling v. Northern States Power Co., 478 N.W.2d 498, 505-06 (Minn. 1991)). In Huff, the Plaintiffs' claims were against the manager of a corporation, and the court found there was no evidence upon which a reasonable inference could be drawn that the actions of a manager were not taken on behalf of the corporation. Huff, 606 N.W.2d at 470.

Here, Ricketts is not a mere employee or even a supervisor or manager. Instead, he is the CEO of OEF. Under Nebraska law, for a CEO to be held liable for tortious interference with business relations, there must be, at the pleading stage, some allegation that the action was taken for "his or her own personal benefit," or for the benefit of an "entity other than the employer." Id. Taking the pleadings as true, the Appellants fail to plead facts from which a reasonable inference could be drawn that Ricketts' actions were not taken on behalf of OEF. Even if his actions were taken out of ill-will, he was still acting in his capacity as CEO, and there is no claim for tortious interference here. We note that plaintiffs in a similar position are not without remedy, as "the [corporation's agent's] actions are those of the corporation; the employee's dispute is with the company employer for breach of contract, not the agent individually for a tort." Id. at 467 (citing Nordling v. Northern States Power Co., 478 N.W.2d 498, 505 (Minn. 1991)).

III.

Accordingly, we affirm the district court's grant of summary judgment to OEF and Hugo and the dismissal of the tortious interference claim against Ricketts.

RILEY, Chief Judge, concurring in part and dissenting in part.

I would reverse the grant of summary judgment on the appellants' retaliation claims because, viewing the record in the light most favorable to the appellants, there

are genuine factual disputes underpinning the legal question whether OEF and Hugo are integrated employers.

My fundamental concern is that the district court in this case made the same mistake that earned the Fifth Circuit a summary reversal earlier this year: the court "failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the non[-]movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 572 U.S. ___, ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (first alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

According to the appellants' reasonable view of the record, Hugo employees performed most of OEF's routine human resources functions, had sole authority to write OEF's checks, directed OEF's hiring and firing of employees, controlled OEF's payroll, kept a single integrated employee database for both OEF and Hugo, managed integrated insurance for Hugo and OEF employees, provided OEF legal advice, and prepared OEF's tax filings. OEF's sole voting director was Hugo's sole voting member, and at least one Hugo employee exercised broad authority over OEF—including firing one of the appellants. OEF received all of its funding from Hugo and could not logistically function without the day-to-day involvement of Hugo employees. If a jury found these facts to be true, the legal conclusion that OEF and Hugo are integrated employers would be inescapable. See, e.g., Sandoval v. Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 796-800 (8th Cir. 2009); Baker v. Stuart Broad. Co., 560 F.2d 389, 392 (8th Cir. 1977).

To be sure, if a jury rejected the appellants' view of the evidence, the majority's legal decision that OEF and Hugo are not integrated would carry the day. But "a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Tolan, 572 U.S. at ___, 134 S. Ct. at 1866 (internal marks omitted) (quoting Anderson, 477

U.S. at 249).  A jury—not a district or appellate judge—must resolve any genuine factual disputes underpinning a legal question.  See, e.g., In re Wholesale Grocery Prods. Antitrust Litig., 752 F.3d 728, 733-34 & n.5 (8th Cir. 2014).  In this case, a jury should resolve the disputed factual questions regarding OEF and Hugo's integration—for example, by answering factual interrogatories, thereby permitting the court to answer the legal question at issue based on the jury's findings.  See id. at 735 n.7.

The allegations in this case are significant.  If the appellants' claims are true, two female employees were subjected to persistent sexual harassment by a boorish individual and then summarily fired because they complained about the harassment. I believe there plainly is enough evidence to send this case to a jury.

I join Part II.B of the court's opinion and otherwise respectfully dissent.

_____