Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/24/2016 09:09 AM CDT

Sybille Pierce, appellee, v.
Landmark Management Group,
Inc., et al., appellants.

___ N.W.2d ___

Filed June 24, 2016.    No. S-14-867.

1. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

2. **Trial: Appeal and Error.** A general assignment that the court erroneously overruled objections, without supporting argument as to why the rulings were erroneous or how they resulted in prejudice, is insufficient to preserve the issue for appellate review.

3. **Records: Appeal and Error.** It is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.

4. ____: ____. Rulings of the trial court which do not appear in the record are not considered on appeal.

5. **Motions for New Trial: Damages: Appeal and Error.** A motion for new trial is a prerequisite to obtaining appellate review of the issue of excessive damages.

6. **Employer and Employee: Federal Acts.** Employers are covered by the Family and Medical Leave Act of 1993 when they employ 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

7. ____: ____. Separate entities are deemed to be a single employer for purposes of the Family and Medical Leave Act of 1993 if they meet the integrated employer test.

8. ____: ____. When the integrated employer test is met, the employees of all entities making up the integrated employer are counted to determine employer coverage under the Family and Medical Leave Act of 1993.

9. **Administrative Law: Employer and Employee: Federal Acts.** The regulations promulgated by the U.S. Department of Labor interpreting

the Family and Medical Leave Act of 1993 establish the test for determining whether legally distinct companies may be considered so interrelated that they constitute a single employer for purposes of the act.

10. **Employer and Employee.** The integrated employer test involves consideration of four factors: (1) common management, (2) interrelation between operations, (3) centralized control of labor operations, and (4) degree of common ownership/financial control.

11. \_\_\_\_. Under the integrated employer test, whether separate entities are sufficiently integrated is not determined by any single factor, but, rather, the entire relationship between the entities is to be reviewed in its totality.

12. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

13. \_\_\_\_: \_\_\_\_. In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

14. **Trial: Juries: Evidence.** Where the facts are undisputed or are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the trial court to decide the question as a matter of law rather than submit it to the jury for determination.

15. **Summary Judgment: Evidence: Proof.** A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. The burden of producing evidence then shifts to the party opposing the motion, who must present evidence showing the existence of a material fact that prevents summary judgment as a matter of law.

16. **Summary Judgment.** If the movant for summary judgment establishes a material fact, and that fact is not contradicted by the adverse party, the court will determine that there is no issue as to that fact.

17. \_\_\_\_. Mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent an award of summary judgment.

18. **Summary Judgment: Affidavits.** A party may not create an issue of fact at the summary judgment stage by submitting an affidavit that contradicts his or her earlier testimony.

19. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial

discretion is involved only when the rules make discretion a factor in determining admissibility.

20. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

21. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

22. **Employment Security.** Under Nebraska law, unemployment compensation benefits are not a collateral source, because they are funded by employer contributions. Generally, such benefits should be deducted from a backpay award in employment cases.

23. **Appeal and Error.** A lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

24. **Rules of Evidence: Witnesses: Other Acts.** The trial court has discretion, pursuant to Neb. Evid. R. 608(2)(a), Neb. Rev. Stat. § 27-608(2)(a) (Reissue 2008), to admit evidence of prior conduct to impeach a witness' credibility, so long as the evidence is probative of the witness' character for truthfulness.

25. **Rules of Evidence: Taxes.** Where evidence of omissions or inaccuracies on tax returns does not necessarily suggest dishonesty, such evidence is generally too tenuous to be probative of truthfulness or untruthfulness.

26. ____: ____. Evidence that a witness did not report certain income on his or her tax returns, without more, is not sufficiently probative of character for truthfulness or untruthfulness to be admissible under Neb. Evid. R. 608(2), Neb. Rev. Stat. § 27-608(2) (Reissue 2008).

27. **Verdicts: Appeal and Error.** In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence.

28. **Trial: Evidence: Witnesses: Juries: Appeal and Error.** All conflicts in the evidence, expert or lay, and the credibility of the witnesses are for the jury and not for the appellate court.

29. **Federal Acts: Attorney Fees.** Under the Family and Medical Leave Act of 1993 and the ADA Amendments Act of 2008, the prevailing party is entitled to an award of reasonable attorney fees.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

Molly Adair-Pearson, of Adair Pearson Law, for appellants.

Craig F. Martin, Sarah F. Macdissi, and Sarah M. Smith, of Lamson, Dugan & Murray, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, Cassel, and Stacy, JJ.

Stacy, J.

## I. NATURE OF CASE

Sybille Pierce sued her former employers claiming she was terminated in violation of the Family and Medical Leave Act of 1993 (FMLA)[1] and the ADA Amendments Act of 2008 (ADAAA).[2] The trial court granted partial summary judgment in favor of Pierce on the issue of whether the employers were "integrated" and met the threshold number of employees to be covered by the FMLA. The case was then tried to a jury, which returned a verdict for Pierce on both the FMLA and the ADAAA claims. The employers timely appealed. Finding no reversible error, we affirm.

## II. FACTS

### 1. Pierce Work History

From 2004 through 2011, Pierce worked for two companies, both of which were owned by David Paladino. From 2004 through 2008, Pierce was the operations manager for Landmark Management Group, Inc. (Landmark), a property management business. From 2008 to 2009, Pierce managed a storage facility for Cornhusker Road LLC, doing business as Dino's Storage (Dino's Storage). While managing the storage facility, Pierce also rented moving trucks to customers, but it is unclear from the record whether the truck rental business was operated at the time through Dino's Storage or through another of Paladino's companies, Dodge Street, LLC. From 2009 until February 22,

---

[1] 29 U.S.C. § 2601 et seq. (2012).

[2] 42 U.S.C. § 12101 et seq. (2012).

2011, Pierce worked as a legal assistant for Landmark and also continued renting moving trucks. During this period, she was paid by Landmark for her work as a legal assistant and was paid by Dino's Storage for her work renting trucks.

In 2010, Pierce was diagnosed with "Idiopathic Thrombocytopenic Purpura," which is a blood disorder that causes abnormally low platelet counts and predisposes patients to a high risk of spontaneous bleeding. Pierce's treatment included steroid injections, intravenous immunoglobin infusions, and eventually a splenectomy surgery in November 2010, for which she took paid vacation time. After recovering from surgery, Pierce returned to work at Landmark and Dino's Storage.

In January 2011, Pierce's condition worsened and her doctor recommended 4 weeks of infusion treatment using a chemotherapy drug. After her first chemotherapy treatment, Pierce sent her supervisor, Mary Anderson, an e-mail describing her reaction to the treatment. In the e-mail, Pierce advised Anderson she was going to talk with her doctor about whether she should take "medical leave" while undergoing the treatment. In reply to Pierce's e-mail, Anderson wrote: "We would like you to come back when you are able to be here every day and give 100% and not miss any days in the foreseeable future." To this, Pierce replied: "[O]k. I just want to make sure I understand correctly. You want me to take off from now until this treatment is over, which would be sometime in February. And you would hold my position for me until then." Anderson responded: "Yes, we want you to take the time off and when you are able to come back at 100% you will have a job." The following morning, Anderson sent an e-mail to a group of Landmark and Dino's Storage recipients advising, "FYI, [Pierce] is taking a medical leave until sometime in February."

By mid-February 2011, Pierce had finished her treatment and her blood disorder was in remission. On February 21, Pierce called Anderson and advised she was ready to return to

work. The next day, Pierce had a meeting with Paladino and Anderson. The parties do not dispute that during this meeting, Pierce was told her former position had been filled. However, the parties disagree about whether Pierce was offered another position during the meeting. They also disagree about whether Pierce quit her employment or was terminated.

According to Pierce, during the meeting, they discussed other possible jobs within the companies Paladino owned, but Paladino wanted assurances that Pierce's condition would not result in significant absences. Pierce testified the meeting ended without any job offer; Paladino and Anderson told Pierce they wanted to talk things over and would call her later. According to Pierce, Anderson called her later the same evening to advise, "[Paladino] and I talked it over and we're going to let you go." The next day, Pierce's immediate supervisor at Dino's Storage sent an e-mail to other Dino's employees which read: "I'm going to keep this short so I don't say something I will regret. [Paladino] fired [Pierce] yesterday because she and her doctors couldn't guarantee that her treatment will keep her permanently healthy."

Paladino and Anderson denied terminating Pierce's employment. According to both Paladino and Anderson, Pierce was offered two different positions during the meeting. Pierce told them she wanted to go home and speak with her husband about the job offers. Anderson testified that when she telephoned later that evening to follow up, Pierce turned down both job offers.

Pierce sued Landmark, Dino's Storage, and Dodge Street, claiming she had been unlawfully terminated. We refer to these entities collectively as "the employers."

## 2. THE EMPLOYERS

Landmark is a third-party management company. It is owned by Paladino, and it manages various storage facilities, many of which are also owned by Paladino. Landmark has separate management agreements with each of the storage facilities. Maintenance employees of Landmark generally report

to Landmark's main office at 2702 Douglas Street in Omaha, Nebraska, and from there, they are dispatched to the various storage facilities. The parties stipulated that at all relevant times, Landmark had 38 employees.

Dino's Storage operates a storage facility in Omaha. Dino's Storage is a trade name used by the storage facility; the actual entity is Cornhusker Road, and Paladino is the controlling shareholder. Dino's Storage operates out of the same space as does Landmark—2702 Douglas Street in Omaha. The parties stipulated that Dino's Storage had 17 employees at all relevant times.

Dodge Street owns the property at 2702 Douglas Street out of which Landmark and Dino's Storage operate. Paladino is also a shareholder of Dodge Street. According to Paladino, "[t]he primary role of Dodge Street, LLC, is [to] own and operate [the] storage facility." The parties stipulated that Dodge Street had no employees during the relevant time period. The role of Dodge Street in Pierce's claims is not entirely clear from the record, but no party suggests any error associated with its inclusion in this lawsuit.

### 3. PROCEDURAL HISTORY

#### (a) Lawsuit

Pierce filed an employment discrimination suit in the district court for Douglas County, alleging violations of the FMLA, the ADAAA, and the Nebraska Fair Employment Practice Act.[3] Only the FMLA and the ADAAA claims proceeded to trial.

In connection with the FMLA claim, Pierce claimed the employers were "integrated" for purposes of meeting the FMLA employee numerosity requirement,[4] alleging:

> [T]he [employers] share a common owner, . . . Paladino; [the employers] operate out of shared office space located at 2702 Douglas Street, Omaha, NE 68131; all billing

---

[3] Neb. Rev. Stat. § 48-1101 et seq. (Reissue 2010).

[4] See 29 U.S.C § 2611(4)(A)(i).

and accounting for the [employers] is run out of the same office space located at 2702 Douglas Street; and [the employers] share common employees, including common maintenance, information technology, and bookkeeping employees. In addition . . . Pierce was employed by both Landmark and Dino's.

In their answer, the employers generally denied the allegations in Pierce's complaint and raised the affirmative defense that Pierce failed to mitigate her damages.

### (b) Summary Judgment

Pierce moved for partial summary judgment, asking the court to find as a matter of law that the employers were integrated for purposes of the FMLA. The district court granted summary judgment in favor of Pierce, finding "there is no genuine issue of material fact as to the [employers'] being integrated . . . for purposes of the [FMLA]."

### (c) Motions in Limine

Before trial, Pierce filed three motions in limine. The first motion sought to exclude evidence that Pierce had received unemployment compensation benefits after leaving Landmark's employ. The second motion sought to exclude evidence that Pierce did not report, on her state and federal tax returns, income she earned working as a nanny. The third motion sought to exclude an undated, unsigned, handwritten note the employers planned to offer in support of their claim that Pierce was offered, and refused, alternative positions with the employers. The trial court sustained all three of Pierce's motions in limine, over the employers' objection. At trial, the employers were not permitted to offer the excluded evidence, but made detailed offers of proof outside the jury's presence.

### (d) Jury Trial and Posttrial Motions

Following a 3-day trial, the jury returned a verdict for Pierce and awarded damages on both the FMLA and the ADAAA claims. Pierce then filed a motion seeking liquidated damages

under the FMLA in an amount equal to the amount of compensatory damages awarded by the jury.[5] The district court granted Pierce's motion and entered judgment for Pierce on the FMLA claim in the amount of $19,281.36 in backpay, $19,281.36 in liquidated damages, and prejudgment interest at the statutory rate. On the ADAAA claim, judgment was entered for Pierce in the amount of $2,500 in "Other" damages and $28,537.63 in punitive damages.

Pierce then moved for an award of attorney fees and costs under both the FMLA and the ADAAA.[6] The court awarded her $67,979.70 in attorney fees and $2,054.95 in costs.

Thereafter, the employers apparently filed a motion for new trial which included a request that the trial judge recuse himself. The record shows a hearing was held on the motion, but neither the employers' motion nor the court's order ruling on it appear in the record.

The employers filed this appeal, and we moved the case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[7]

## III. ASSIGNMENTS OF ERROR

The employers assign, rephrased, that the trial court erred in (1) granting partial summary judgment on the integrated employer issue, (2) excluding evidence that Pierce received unemployment benefits, (3) excluding evidence that Pierce did not report nanny income on her tax returns, (4) excluding the unsigned handwritten note, (5) admitting testimony and exhibits which lacked foundation and contained hearsay, (6) refusing to give certain jury instructions requested by the employers, (7) entering judgment on a verdict which was not supported by sufficient evidence, (8) entering judgment on a verdict which awarded excessive damages, (9) awarding

---

[5] See 29 U.S.C. 2617(a)(1)(A)(iii).

[6] See 29 U.S.C. § 2617(a)(3) and 42 U.S.C. § 12205.

[7] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

excessive attorney fees, and (10) overruling the employers' motion for new trial.

## IV. ANALYSIS

### 1. Matters Properly Before Us

[1,2] Four of the employers' assignments of error are not properly presented for appellate review. First, the employers broadly assign that "[t]he trial court erred in overruling [the employers'] objections and allowing testimony and receiving exhibits containing hearsay and lacking in foundation." Their brief identifies 17 separate rulings relating to this assignment of error, but other than referencing the page and line of the rulings, the brief presents no argument. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[8] A general assignment that the court erroneously overruled objections, without supporting argument as to why the rulings were erroneous or how they resulted in prejudice, is insufficient to preserve the issue for appellate review.[9]

[3] The employers also assign that "[t]he trial court erred in refusing to give certain jury instructions requested by [the employers]." Neither the instructions given by the court nor those proposed by the parties were included in the record on appeal. Although the jury instruction conference was included in the bill of exceptions, we cannot glean from the discussion therein the full text of the instructions given or those proposed and rejected. As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.[10] Here, the

---

[8] See *Stekr v. Beecham*, 291 Neb. 883, 869 N.W.2d 347 (2015).

[9] See *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008).

[10] *Centurion Stone of Neb. v. Whelan*, 286 Neb. 150, 835 N.W.2d 62 (2013); *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

record is insufficient to support any assigned error regarding the jury instructions.

[4,5] Finally, the employers assign that the trial court erred in overruling their motion for new trial, which included a request to recuse the judge. Our appellate record includes the hearing on the motion but does not contain the motion itself or any order ruling on the same. Argument during the hearing indicates there was a question about the timelines of the motion. Rulings of the trial court which do not appear in the record are not considered on appeal.[11] We conclude the record is insufficient to support the employers' assignment related to the motion for new trial. And because a motion for new trial is a prerequisite to obtaining appellate review of the issue of excessive damages,[12] we likewise conclude the employers' assignment of error relating to excessive damages is not properly before us.

## 2. Integrated Employer Under FMLA

[6-8] Employers are covered by the FMLA when they employ 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.[13] Separate entities are deemed to be a single employer for purposes of the FMLA "if they meet the integrated employer test."[14] When the integrated employer test is met, the employees of all entities making up the integrated employer are counted to determine employer coverage under the FMLA.[15]

---

[11] *Durkan v. Vaughan*, 259 Neb. 288, 609 N.W.2d 358 (2000).

[12] See Neb. Rev. Stat. § 25-1912.01(2) (Reissue 2008) (stating that "[w]hen an action has been tried before a jury . . . a motion for a new trial shall be a prerequisite to obtaining appellate review of the issue of inadequate or excessive damages").

[13] 29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a) (2015).

[14] 29 C.F.R. § 825.104(c)(2).

[15] *Id.*

The parties stipulated that during the relevant period, Landmark had 38 qualifying employees, Dino's Storage had 17 qualifying employees, and Dodge Street had no employees. Therefore, the FMLA's numerosity requirement is met only if Landmark and Dino's Storage are deemed to be integrated for purposes of the FMLA.

[9,10] The regulations promulgated by the U.S. Department of Labor interpreting the FMLA establish the test for determining whether legally distinct companies may be considered so interrelated that they constitute a single employer for purposes of the FMLA.[16] This integrated employer test involves consideration of four factors: (1) common management, (2) interrelation between operations, (3) centralized control of labor operations, and (4) degree of common ownership/financial control.[17] This test has been described as appreciating that "small businesses—*i.e.* those with less than 50 employees—are not subject to the FMLA's 'onerous requirement of keeping an unproductive employee on the payroll,' while simultaneously preventing companies from structuring their business to avoid labor laws."[18] The same four-factor test is applied in other types of employment discrimination[19] and labor cases.[20]

[11] The first factor focuses on the degree to which different entities share common management and includes consideration

---

[16] *Id.*

[17] *Id.*

[18] *Grace v. USCAR*, 521 F.3d 655, 664 (6th Cir. 2008), quoting *Engelhardt v. S.P. Richards Co., Inc.*, 472 F.3d 1 (1st Cir. 2006).

[19] See, e.g., *Sandoval v. American Bldg. Maintenance Industries*, 578 F.3d 787 (8th Cir. 2009); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977); *Billingsley v. BFM Liquor Mgmt.*, 264 Neb. 56, 645 N.W.2d 791 (2002).

[20] See, e.g., *Hall Cty. Pub. Defenders v. County of Hall*, 253 Neb. 763, 571 N.W.2d 789 (1998), *disapproved on other grounds, Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011*, 269 Neb. 956, 698 N.W.2d 45 (2005); *American Fed. S., C., & M. Emp., AFL-CIO v. County of Lancaster*, 196 Neb. 89, 241 N.W.2d 523 (1976).

of whether the same individuals manage or supervise the different entities and whether the entities have common officers and boards of directors.[21] The second factor examines the interrelation of operations, including whether the entities share managers or personnel, payroll, insurance programs, office space, or equipment.[22] The third factor, centralized control, examines the extent to which labor decisions involving the entities are centralized, including oversight of personnel and decisions of hiring, firing, and discipline.[23] And the fourth factor, degree of common ownership or financial control, focuses on the extent to which entities share common owners, including whether one entity owns shares of the other.[24] Whether separate entities are sufficiently integrated is not determined by any single factor, but, rather, the entire relationship between the entities is to be reviewed in its totality.[25]

The district court granted Pierce's motion for partial summary judgment and found as a matter of law that the employers were "integrated" for purposes of the employee numerosity requirement of the FMLA. The employers assign this as error and argue there were material issues of fact which precluded summary judgment.

[12-15] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[26] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party

---

[21] *Davis v. Ricketts*, 765 F.3d 823 (8th Cir. 2014).

[22] *Id.*

[23] *Id*. See, also, *Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977).

[24] *Davis, supra* note 21.

[25] 29 C.F.R. § 825.104(c)(2).

[26] *DMK Biodiesel v. McCoy*, 290 Neb. 286, 859 N.W.2d 867 (2015).

against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[27] Where the facts are undisputed or are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the trial court to decide the question as a matter of law rather than submit it to the jury for determination.[28] A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion,[29] who must present evidence showing the existence of a material fact that prevents summary judgment as a matter of law.[30]

### (a) Pierce's Evidence on
### Summary Judgment

We begin our summary judgment analysis by considering whether Pierce produced enough evidence to make a prima facie case demonstrating she was entitled to judgment on the integrated employer issue if the evidence were uncontroverted at trial. In support of her summary judgment motion, Pierce offered her own affidavit, the deposition testimony of Anderson (the operations manager for Landmark), the deposition testimony of Paladino, and the employers' written discovery responses.

Regarding the common management factor, this evidence showed that Paladino makes the high-level management decisions for both Landmark and Dino's Storage. Paladino explained in his deposition that he has a manager who "handle[s] the Dino's Storage side of the business" and another who "handles

---

[27] *Id.*

[28] *Sweem v. American Fidelity Life Assurance Co.*, 274 Neb. 313, 739 N.W.2d 442 (2007).

[29] *Durkan, supra* note 11.

[30] See *Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005).

the Landmark part of the business," but "a lot of it was directed by me [and] implemented by them."

Regarding the interrelation of operations factor, this evidence showed significant interrelation between Landmark and Dino's Storage. The two entities share office space and at least some personnel. According to Paladino's deposition testimony, Landmark's bookkeeper is also responsible for paying the bills, preparing reports, and handling bank deposits and reconciliation for Dino's Storage. The same project manager oversees construction projects for both Landmark and Dino's Storage and reports directly to Paladino. One individual works as the "IT guy" for both Landmark and Dino's Storage. Paladino testified there is a common payroll process under which all Dino's Storage employees report their hours to, and are paid through, Landmark. Paladino explained he uses the combined payroll system as a "way to save money," because when each entity had its own payroll process "it was very, very expensive to do it that way . . . . When you start piling up those different entities, those fees add up." Pursuant to management agreements between Landmark and Dino's Storage, Landmark's maintenance employees report to work at Landmark, and from there they are dispatched to various Dino's Storage facilities to perform work as needed. Finally, this evidence showed Pierce worked simultaneously for Landmark and Dino's Storage.

Regarding the centralized control of labor factor, the evidence contained many examples of centralized staffing and shared work processes between Landmark and Dino's Storage. In addition to the common payroll process, the centralized accounting and bookkeeping process, and the centralized technical support about which Paladino testified, he testified to several examples of moving employees between entities to accommodate overall labor needs. Pursuant to a management agreement, Landmark's maintenance employees are dispatched to perform a wide variety of work, including the maintenance of Dino's Storage facilities. But the evidence of centralized

labor decisions between Landmark and Dino's Storage went beyond the management agreements. For instance, Paladino moved an employee from Landmark (where she made deposits for storage facilities and audited sales files) and "put her in charge of one of the storage facilities," after which he "changed her role" again so "she was doing a little bit of work for Landmark." And Pierce was hired to work initially for Landmark, was then moved to work as a manager for Dino's Storage, and then was moved back to Landmark while simultaneously working part time for Dino's Storage. Paladino's active role in personnel decisions involving Landmark and Dino's Storage is also evidenced by his deposition testimony that he was the one to hire Pierce, the one to move her between Landmark and Dino's Storage, and the one to offer her other positions when she was ready to return to work.

Finally, regarding the common ownership factor, the evidence was undisputed that Paladino owns 100 percent of Landmark and is the primary shareholder of Dino's Storage.

Considering this evidence in its totality, we conclude Pierce made a prima facie case that the employers were integrated under the four-factor test. The evidence Pierce produced was sufficient to demonstrate she would prevail on this issue if the evidence were uncontroverted at trial. The burden to produce evidence showing a genuine issue of fact shifted to the parties opposing the motion,[31] and we now consider the evidence adduced by the employers in response.

### (b) The Employers' Evidence on Summary Judgment

At the summary judgment hearing, the employers submitted only the affidavit of Paladino. Paladino averred generally that Landmark, Dino's Storage, and Dodge Street "are all separate entities with different operations and lines of business. Each company has separate bookkeeping, separate employees, and separate policies." We examine these statements to determine

---

[31] See *Durkan, supra* note 11.

whether they created a genuine issue of material fact. In doing so, we are guided by familiar principles.

[16,17] If the movant for summary judgment establishes a material fact, and that fact is not contradicted by the adverse party, the court will determine that there is no issue as to that fact.[32] Mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent an award of summary judgment.[33]

[18] The affidavit submitted by Paladino did not create any issue of material fact regarding whether the employers were integrated. Paladino's conclusions that Landmark and Dino's Storage had "separate bookkeeping" and "separate employees" were unsupported by any facts in the affidavit and were inconsistent with his earlier deposition testimony about shared bookkeeping and shared employees. A party may not create an issue of fact at the summary judgment stage by submitting an affidavit that contradicts his or her earlier testimony.[34]

As it regarded the material issue of whether the employers were integrated, Paladino's affidavit consisted of little more than conclusions and did not create an issue of fact. As such, the employers failed to meet their burden of presenting evidence showing the existence of a material issue of fact preventing summary judgment.

On this record, we conclude the trial court did not err in granting partial summary judgment and finding as a matter of law that the employers are integrated for purposes of the FMLA. In light of this conclusion, it is unnecessary to address Pierce's alternative argument that the employers are also "joint employers" under the FMLA.[35]

---

[32] See *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997).

[33] See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999).

[34] See *Popoalii v. Correctional Medical Services*, 512 F.3d 488 (8th Cir. 2008).

[35] Brief for appellants at 24, citing 29 C.F.R. § 825.106 (2015).

### 3. Rulings on Motions
### in Limine

The employers assign error to the trial court's rulings on Pierce's motions in limine. We address each motion in limine separately, applying the following standards of review.

[19-21] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[36] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[37] Because the exercise of judicial discretion is implicit in determinations of admissibility under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2008), the trial court's decision will not be reversed absent an abuse of discretion.[38] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[39]

### (a) Unemployment Benefits

Pierce filed a motion in limine seeking to "exclude at trial any mention of or reference to the fact that [she] may have received unemployment benefits." In support of excluding the evidence, Pierce primarily argued that evidence of unemployment benefits should be excluded under the collateral source rule, which provides generally that benefits received by a plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise

---

[36] See *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015).

[37] *R & B Farms v. Cedar Valley Acres*, 281 Neb. 706, 798 N.W.2d 121 (2011).

[38] *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

[39] See, *id.*; *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012).

recoverable from the wrongdoer.[40] Pierce also argued the evidence, even if relevant, should be excluded under § 27-403, because any probative value was substantially outweighed by the danger of unfair prejudice. After a hearing, the trial court granted the motion in limine without elaboration. During trial, the employers were not allowed to offer evidence of the amount of unemployment benefits Pierce received, but made an offer of proof indicating she had been paid a total of $7,615.30.

On appeal, the employers assign error only to the district court's decision to prohibit the jury from hearing evidence of unemployment benefits. The employers argue that unemployment benefits are not a collateral source under Nebraska law and further argue that they were prejudiced by the exclusion of such evidence, because "the unemployment benefits received should have been deducted from the damages award."[41]

[22] The employers are correct that under Nebraska law, unemployment compensation benefits are not considered a collateral source for purposes of damages in employment cases. In *Airport Inn v. Nebraska Equal Opp. Comm.*,[42] we held that unemployment compensation benefits are not a collateral source, because they are funded by employer contributions, and we concluded the district court was correct to deduct unemployment benefits from a backpay award under the Nebraska Fair Employment Practice Act. Several years later, in *IBP, inc. v. Sands*,[43] we reiterated and strengthened our holding in *Airport Inn*, stating broadly that "unemployment compensation awards should be deducted from any backpay award."

---

[40] *Strasburg v. Union Pacific RR. Co.*, 286 Neb. 743, 839 N.W.2d 273 (2013).

[41] Brief for appellants at 30.

[42] *Airport Inn v. Nebraska Equal Opp. Comm.*, 217 Neb. 852, 353 N.W.2d 727 (1984).

[43] *IBP, inc. v. Sands*, 252 Neb. 573, 582, 563 N.W.2d 353, 359 (1997).

Pierce directs us to cases from other jurisdictions which hold that unemployment benefits *are* a collateral source.[44] She urges us to revisit our holdings in *Airport Inn* and *IBP, inc.* and either adopt the rationale of those courts which prohibit such deductions altogether[45] or, alternatively, adopt the rationale of those courts which conclude the deduction of unemployment benefits from backpay awards is a matter properly left to the sound discretion of the trial court.[46] While we acknowledge the split of authority on this issue, we see no principled reason in the present case to revisit our holdings in *Airport Inn* and *IBP, inc*. And because the issue is not presented on this record, we leave for another day consideration of whether deductions from backpay awards under our holdings in *Airport Inn* and *IBP, inc.* are mandatory or discretionary.

In this appeal, the employers assign that the district court erred in prohibiting them from presenting evidence to the jury that Pierce received unemployment benefits. The employers generally equate this evidentiary ruling to a legal finding that they were not entitled to an offset from any backpay award due to Pierce's receipt of unemployment benefits.

[23] But this is incorrect. The district court's decision not to permit the jury to hear evidence of Pierce's unemployment benefits did not determine whether the employers were entitled to an offset of those benefits under our holdings in *Airport Inn* and *IBP, inc*. Nor did the court's evidentiary ruling

---

[44] See, *Thurman v. Yellow Freight Systems, Inc*., 90 F.3d 1160 (6th Cir. 1996), *amended on denial of rehearing* 97 F.3d 833; *Gaworski v. ITT Commercial Finance Corp*., 17 F.3d 1104 (8th Cir. 1994); *Craig v. Y & Y Snacks, Inc*., 721 F.2d 77 (3d Cir. 1983).

[45] See, e.g., *Thurman, supra* note 44; *Gaworski, supra* note 44; *Craig, supra* note 44; *Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549 (11th Cir. 1983); *Kauffman v. Sidereal Corp.*, 695 F.2d 343 (9th Cir. 1982).

[46] See, e.g., *Dailey v. Societe Generale*, 108 F.3d 451 (2d Cir. 1997); *Lussier v. Runyon*, 50 F.3d 1103 (1st Cir. 1995); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544 (10th Cir. 1988); *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417 (7th Cir. 1986).

preclude the employers from seeking such a deduction. To the contrary, once the jury awarded backpay, the employers could have asked the trial court to deduct as a matter of law the unemployment benefits Pierce received.[47] Several postaward motions were filed in this case, including Pierce's motion for liquidated damages in an amount equal to the jury's award of compensatory damages under the FMLA. Yet, there is nothing in the record or the briefing which suggests the employers presented a posttrial motion of any sort asking the trial court to apply our holdings in *Airport Inn* and *IBP, inc.* and deduct Pierce's unemployment compensation benefits from the jury's backpay award. A lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[48] We conclude the assignment of error relating to whether the jury should have been permitted to hear evidence of unemployment benefits did not properly preserve the issue the employers attempt to raise on appeal—the issue of whether a deduction from the jury's award of backpay was legally appropriate.

To the extent the employers' briefing can fairly be construed to suggest the trial court should have reduced the jury's backpay award because it was excessive, the issue of excessive damages is not before us. As discussed previously, a motion for new trial is a prerequisite for a claim of excessive damages.[49] Because no motion for new trial is properly before us, the prerequisite for obtaining appellate review of an excessive damages issue has not been met. This assignment of error does not require reversal.

---

[47] See, e.g., *Dailey, supra* note 46 (after jury award of backpay, employer filed posttrial motion to deduct unemployment compensation benefits from backpay award).

[48] See *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015).

[49] See § 25-1912.01(2).

### (b) Nanny Income

Pierce filed a motion in limine seeking to exclude evidence that she did not include, on her state or federal income tax returns, earnings received from working as a nanny. In support of her motion, Pierce argued such evidence was not relevant and was more prejudicial than probative. The court sustained the motion and excluded the evidence. The employers assign this as error, arguing the evidence was probative of Pierce's character for truthfulness or untruthfulness and should have been received pursuant to Neb. Evid. R. 608(2)(a), Neb. Rev. Stat. § 27-608(2)(a) (Reissue 2008).

Preliminarily, we note the jury heard considerable evidence regarding the money Pierce earned working as a nanny for various families. Evidence of these earnings was relevant to Pierce's claim for backpay. Testimony was offered regarding the time periods during which Pierce worked as a nanny and the amount of money she was paid by each family, but the employers were not allowed to elicit testimony on cross-examination that Pierce had not reported the "nannying" income on her tax returns. During trial, the employers renewed their objection to the court's ruling on the motion in limine and made an offer of proof that, if permitted to question Pierce on the issue, she would testify she "did not report any of the income she earned from working as a nanny on her state and federal income taxes." On appeal, the employers argue it was prejudicial error to exclude such evidence because it was probative of Pierce's character for truthfulness or untruthfulness.

[24] The trial court has discretion, pursuant to § 27-608(2) (a), to admit evidence of prior conduct to impeach a witness' credibility, so long as the evidence is probative of the witness' character for truthfulness. Section 27-608(2) provides in relevant part:

> Specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility . . . may not be proved by extrinsic evidence. They may, however, in

the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness . . . .

The central question regarding this assignment of error, and one which we have not previously considered, is whether evidence that a witness did not report certain income on her tax returns is probative of her character for truthfulness or untruthfulness. Courts in other jurisdictions have reached different conclusions, depending on the facts.

[25] Generally, evidence that a witness has knowingly provided false information on tax filings is considered probative of the witness' character for truthfulness or untruthfulness.[50] Similarly, evidence that a witness intentionally failed to pay taxes at all, particularly for multiple years, is often considered probative of the witness' character for truthfulness.[51] But where evidence of omissions or inaccuracies on tax returns does not necessarily suggest dishonesty, such evidence is generally too tenuous to be probative of truthfulness or untruthfulness.[52] As the Eighth Circuit has observed, not every civil tax problem is indicative of a lack of truthfulness.[53]

[26] While there undoubtedly are circumstances under which the failure to report certain income, or reporting false income, on tax returns reflects on the taxpayer's character for truthfulness, the record here does not support such a conclusion. Pierce's tax returns were not offered, and there is nothing in the record, or in the employers' offer of proof, which permits a reasonable inference regarding Pierce's character for truthfulness or untruthfulness. An admission from Pierce that

---

[50] E.g., *United States v. Sullivan*, 803 F.2d 87 (3d Cir. 1986); *United States v. Zandi*, 769 F.2d 229 (4th Cir. 1985); *United States v. Lynch*, 699 F.2d 839 (7th Cir. 1982).

[51] *U.S. v. Hatchett*, 918 F.2d 631 (6th Cir. 1990); *Leaf v. Beihoffer*, 338 P.3d 1136 (Colo. App. 2014).

[52] *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980); *Shafer v. American Emp. Ins. Co.*, 535 F. Supp. 1067 (W.D. Ark. 1982).

[53] *Dennis, supra* note 52.

she did not report nanny earnings on her tax returns, without more, is not sufficiently probative of her character for truthfulness or untruthfulness to be admissible under § 27-608(2), and any slight probative value is outweighed by the danger of unfair prejudice. On this record, we cannot conclude the trial court abused its discretion in granting Pierce's motion in limine to exclude such evidence.

### (c) Handwritten Note

The trial judge sustained Pierce's motion in limine to exclude an unsigned, undated handwritten note. The employers sought to offer the note as evidence that Pierce had been offered other positions during the meeting with Paladino and Anderson. The note read, in pertinent part: "Initially, [Pierce] took a medical leave because she was not able to perform her daily duties. When her medical issues were under control— Landmark Mgmt offered her 2 different job positions and she turned them both down."

The employers concede the handwritten note is an out-of-court statement which they sought to offer for its truth, and its admissibility is therefore governed by the hearsay rules. The employers suggest the note was admissible as a business record under Neb. Evid. R. 803(5), Neb. Rev. Stat. § 27-803(5) (Reissue 2008). But there is no evidence the note was made in the course of a regularly conducted activity of the employers, nor was there evidence the note was prepared at or near the time of the meeting it purports to record. In fact, the employers' offer of proof indicates the note was created 5 months after the meeting by someone who did not attend the meeting and, furthermore, was prepared under circumstances which indicate a lack of trustworthiness. The offer of proof indicates Paladino directed one of his employees to prepare the undated, unsigned note after "giving her appropriate information to fill it out." Under these circumstances, we do not find the trial court abused its discretion in granting Pierce's motion in limine regarding the unsigned note.

### 4. Sufficient Evidence
#### to Support Verdict

[27] The employers assign that the jury's verdict was not supported by sufficient evidence. A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party.[54] In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence.[55]

For the most part, in arguing that the evidence was insufficient to support the verdict, the employers simply reiterate their contention that they were not covered by the FMLA because they were not integrated employers. For the same reasons we rejected this assignment of error previously, we reject it reframed as an assignment of insufficient evidence.

[28] The employers also argue there was insufficient evidence showing that Pierce suffered an adverse employment decision. In support of this argument, the employers point to the testimony of Paladino and Anderson, both of whom testified that they offered Pierce two equivalent positions with Paladino's companies and that Pierce rejected them both, choosing instead to quit. The evidence, however, was in conflict on this issue. Pierce testified the meeting with Paladino and Anderson ended without any job offers, and when Anderson telephoned Pierce later that evening, Anderson told her "we're going to let you go." The jury resolved this conflict in the evidence in Pierce's favor. All conflicts in the evidence, expert or lay, and the credibility of the witnesses are for the jury and not for the appellate court.[56]

---

[54] *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

[55] *Id.*

[56] See *Kniesche v. Thos*, 203 Neb. 852, 280 N.W.2d 907 (1979).

Based on our review of the record, we conclude the evidence was sufficient to support the jury's verdict.

### 5. ATTORNEY FEES

At the hearing on Pierce's motion for attorney fees and costs, her counsel submitted an affidavit which included a detailed billing statement describing counsel's legal work and averments as to reasonableness. Using the lodestar method, Pierce's counsel calculated fees totaling $77,483. The court awarded $67,979.70 in attorney fees.

[29] The employers concede that, as the prevailing party, Pierce is entitled under the FMLA and the ADAAA to an award of reasonable attorney fees. Here, the employers do not contest the reasonableness of the hourly rates submitted, but argue the fee award was unreasonable for two reasons. First, they argue the number of hours claimed was excessive. Second, they argue the fee award should have been capped by the contingent fee agreement between Pierce and her attorneys.

Regarding their claim that the number of hours worked on the case was excessive, the employers suggest the itemized statement submitted by Pierce's lawyer contained duplicative entries, included charges for basic research when Pierce's counsel held themselves out as experienced attorneys in employment discrimination matters, and reflected too much time spent on pleadings, discovery, briefing, and correspondence. The employers' brief suggests a fee reduction of 68 percent would be appropriate to account for what they describe as excessive billing.

We have reviewed the affidavit and conclude the request for attorney fees and expenses is reasonable. On this record, we find no abuse of discretion in the court's conclusion that the fees were reasonable.

Alternatively, the employers argue that any fee award should not be based on the lodestar method, but instead should be based on, and capped by, the contingent fee agreement between Pierce and her attorneys. Pierce's counsel concedes

the existence of a contingency fee arrangement with Pierce, but the record on appeal does not include any fee agreement between Pierce and her counsel, nor does it indicate fully the terms of any such agreement.

As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.[57] Without the subject fee agreement or its terms in the record, the record does not support this assignment of error and we decline to consider it.

## V. CONCLUSION

Having considered the assignments properly before us for review and finding no reversible error, the judgment of the trial court is affirmed.

AFFIRMED.

_____

[57] *Centurion Stone of Neb., supra* note 10; *InterCall, Inc., supra* note 10.